**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                            No. CR 21-0666 JB

COREY EVAN MICHAUD,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the Defendant's oral objections to the Addendum to the Presentence Report, filed January 21, 2022 (Doc. 43)("Addendum"). The parties did not brief the issue, and the Court held an evidentiary hearing on April 11, 2022. See Clerk's Minutes at 1, filed April 11, 2022 (Doc. 56)("April 11 Minutes"). The primary issues are: (i) whether the Defendant Corey Evan Michaud can escape liability for restitution under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA"), to two victims of Michaud's underlying theft conduct because the alleged negligent conduct of the Albuquerque Police Department ("APD") and alleged criminal conduct of a third party constitute superseding legal causes that produced the loss of items belonging to two victims of his theft, thereby relieving Michaud of restitution liability; and (ii) whether Michaud can escape MVRA liability because the specific "conduct underlying [Michaud's] offense[s] of conviction," Hughey v. United States, 495 U.S. 411, 420 (1991)("Hughey"), namely his offenses of unauthorized access of a protected computer, 18 U.S.C. § 1030(a)(2)(C), and possession of ammunition as a narcotics addict, 18 U.S.C. § 922(g)(3), did not directly or proximately cause the losses to any of the victims of Michaud's underlying theft conduct. The Court concludes: (i) Michaud cannot escape MVRA

liability on the basis that APD's negligence or a third party's criminal conduct directly and proximately caused the loss of items belonging to victims of Michaud's theft, thereby relieving him of liability, because the Court finds that neither the APD's alleged negligence nor the third party's criminal conduct are factual causes of the items' loss; and (ii) Michaud can, however, escape MVRA liability on the basis that the specific "conduct underlying [his] offense[s] of conviction," Hughey, 495 U.S. at 420, did not directly or proximately cause the losses to any of the victims of his underlying theft.  Accordingly, the Court has no power to order that Michaud make restitution to any victim of his theft, and the Court will not order him to do so.

## **FINDINGS OF FACT**

When considering an objection to a presentence report or to an addendum thereto, and when neither party challenges the sufficiency of a presentence report's factual allegations, the Court can accept the presentence report's factual allegations as true.  See Fed. R. Crim. P. 32(i)(3)(A).  Where, as here, a party objects to some or all of the facts in a presentence report, a court must "rule on the dispute or determine that a ruling is unnecessary . . . ." Fed. R. Crim. P. 32(i)(3)(B).  Michaud did not dispute the facts in the Presentence Investigation Report, filed October 15, 2021 (Doc. 31)("PSR"), but he raised objections to portions of the Addendum regarding the amount owed in restitution.  See April 11 Minutes at 1-2; Transcript of Hearing at 5:6-19, taken April 11, 2022 (Fooks)("April 11 Tr.");[1] id. at 6:19-25 (Fooks); id. at 7:7-8:5 (Fooks).  The Court held an evidentiary hearing on the objections, but did not at that time resolve them.  See April 11 Minutes at 2.  The Court now makes its findings by a preponderance of the

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

evidence.  See United States v. Williams, No. CR. 17-2556 JB, 2020 WL 4016108, at *6 (D.N.M.

July 16, 2020)(Browning, J.)(citing United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)).

The Court draws on the facts in the Plea Agreement, filed September 10, 2021 (Doc. 30)("Plea"),

the PSR, the Addendum, and as discussed and introduced through exhibits that the Court admitted

at the evidentiary hearing.

       1.        On November 29, 2020, Michaud and several other individuals broke into and stole

items from the Sandia Crest Low Power Radio Facility.[2]  See PSR ¶ 11, at 5.

       2.        At the time of the robbery, Michaud was a daily user of fentanyl and near-daily user

of methamphetamine and was addicted to those controlled substances.  See PSR ¶ 18, at 6; id. ¶ 64,

at 14.

       3.        Michaud committed the robbery to acquire goods that he could sell to help fund his

addiction.  See  PSR ¶ 11, at 5; id. ¶ 18, at 6; id. ¶ 64, at 14.

       4.        The Sandia Crest facility transmits radio broadcasts, including emergency alert

information, and Michaud's actions caused the towers to be unable to broadcast for eight hours.

See PSR ¶¶ 11, 19, at 5-6.

---

[2]There is no indication that Michaud used a firearm or ammunition to effectuate the burglary, or that he had in his possession a firearm or ammunition at the time.  See PSR ¶ 11, at 5. The PSR states only:

> In the early morning hours of November 29, 2020, several individuals, including the defendant, were observed via security footage accessing a secure area of the Sandia Crest Low Power Radio Facility. The group was observed entering the facility and removing equipment from the towers, resulting in the towers being unavailable for broadcast for approximately eight hours.

PSR ¶ 11, at 5.

5.    One of the buildings into which Michaud unlawfully entered was a facility that multiple communications businesses -- including Code 3 Services ("Code 3"), Relevant Radio, City Link Fiber ("City Link"), and Rocky Mountain Ham Radio ("Rocky Mountain") -- rented. See April 11 Tr. at 12:9-17 (Mendenhall, Vanbrandwijk); id. at 14:12-15:2 (Mendenhall, Vanbrandwijk); Addendum at 1-2.

6.    Michaud stole a number of pieces of electrical equipment, including ten standby batteries, a 240-volt portable heater, a 24 port network switch, ten Dell computers,[3] two Rackmount power supply units, and four power inserters for Internet Protocol microwave.  See PSR ¶ 13, at 5.

7.    Michaud also stole the following items from the following specific victims: (i) several electrical devices from Code 3, including a Tripp Lite communications device; (ii) several electrical devices from Relevant Radio, including a Fostex speaker; (iii) several electrical devices from City Link; and (iv) several electrical devices from Rocky Mountain.  See Addendum at 1-2.

8.    Michaud's break-in caused losses in the following amounts because of disrupted transmissions at the facility: (i) sixteen hours of interruption, costing $1,520.00 in man-hour labor, to Code 3; (ii) two hours of labor, costing $190.00 in total, to Relevant Radio; and (iii) eight hours of labor, costing $400.00 in total to City Link.  See Addendum at 1-2.

---

[3]The PSR does not make clear the ownership of the computers, stating only that Michaud stole the items, but not to what business they belonged.  See PSR ¶¶ 13-14, at 5.

9.      The Federal Bureau of Investigation ("FBI") identified Michaud as a culprit in the Sandia Crest break-in when he logged into his email account from one of the computers stolen from the site.[4]  See PSR ¶ 14, at 5.

10.      Albuquerque Police Department ("APD") officers apprehended Michaud around two months after the Sandia Crest break-in, on February 2, 2021.  See PSR ¶ 15, at 5.

11.      Michaud was driving a stolen truck when he was arrested.  See PSR ¶¶ 15-16, at 5.

12.      The truck's bed was filled with a large number of items, including items identified as having been stolen from the Sandia Crest facility.  See PSR ¶¶ 16-17, at 5-6.

13.      Other contents included Michaud's personal items, two rifle magazines and glass pipes, and Michaud was apprehended with oxycodone hydrochloride pills on his person and still was addicted to fentanyl and methamphetamine at the time.  See PSR ¶ 16, at 5-6; id. ¶ 18, at 6; id. ¶ 64, at 14.

14.      The truck did not contain such items as bedding, clothing, and household goods that would be in the possession of a person moving residences.  See PSR ¶ 16, at 5-6; Receipt for Property at 1 (United States' Exhibit 5); April 11 Tr. at 9:17-20 (Court)(admitting into evidence United States' Exhibit 5).

15.      Michaud still had possessions at his residence when FBI searched it later.  See April 11 Tr. at 26:5-10 (Mendenhall, Vanbrandwijk).

---

[4]The PSR does not make clear the ownership of the computer that Michaud accessed.  See PSR ¶ 14, at 5.  The PSR does not indicate that Michaud engaged in other activity while accessing the computer; for example, there is no indication that Michaud engaged in any activity more harmful to the proper owner of the computer, e.g., by accessing sensitive or confidential information belonging to the business entity or by corrupting the computer system.  See PSR ¶ 14, at 5.

16.     Michaud was not in the process of moving residences and did not have in the truck-bed all of his possessions.[5]

17.     The Tripp Lite device belonging to Code 3 and the Fostex speaker belonging to Relevant Radio were not among the items in the truck at the time of Michaud's arrest.[6]

_____

[5]The Court makes this Finding of Fact for the following reasons.  Michaud testified that he was in the process of moving residences and that all of his worldly possessions were in the truck-bed, including the stolen Fostex speaker and Tripp Lite device.  See April 11 Tr. at 44:11-23, 45:20-46:6 (Fooks, Michaud)(testifying that Michaud "was currently in the process of moving" and "had most of [his] belongings with [him]," including "the items that were stolen," although he was "not sure" which ones); id. at 55:24-56:19 (Fooks)("[E]verything that Mr. Michaud had was in the back of that truck, just about everything. The only reason that . . . law enforcement didn't locate those remaining two items, I would posit to the court, is because Mr. Lyke held on to them.").  The Court does not credit Michaud's "I was in the process of moving" narrative.  Although the truck-bed was filled with miscellaneous items, it did not contain items -- e.g., clothing, bedding, household goods -- the Court would expect to find in the possession of a person moving residences.  See FOF ¶ 14.  Moreover, FBI later searched Michaud's then-residence and there found possessions belonging to him, see FOF ¶ 15, suggesting that Michaud did not have on his person or in his truck everything that he owned or possessed.  For these reasons, the Court finds that Michaud was not in the process of moving residences and did not have with him in the truck-bed all of his possessions.

[6]For the reasons below, the Court makes this Finding of Fact, namely that the two disputed items were not in Michaud's vehicle when APD arrested him and that they were no longer in his possession.  The thrust of Michaud's objections is that the items were with him when he was arrested and that APD's negligent handling of the truck's contents caused the loss of the items because the person, James Lyke -- in whose care the items were placed, and the owner of the stolen truck -- stole them.  See FOF ¶ 31 infra nn.8-9 (rejecting Michaud's suggestion that Lyke, APD having placed negligently the items in his possession, stole the Tripp Lite and Fostex devices).  As discussed in the previous footnote, Michaud testified that he was moving residences and had with him all of his worldly possessions, including the two stolen items.  See April 11 Tr. at 44:11-23, 45:20-46:6 (Fooks, Michaud)(testifying that Michaud "was currently in the process of moving" and "had most of [his] belongings with [him]," including "the items that were stolen," although he was "not sure" which ones); id. at 55:24-56:19 (Fooks)("[E]verything that Mr. Michaud had was in the back of that truck, just about everything. The only reason that . . . law enforcement didn't locate those remaining two items, I would posit to the court, is because Mr. Lyke held on to them.").  This sworn testimony is the only evidence either side offered to prove that the items were in the truck at the time of arrest.

As discussed above, see FOF ¶ 16; supra n.5, the Court does not credit Michaud's narrative.  Although the truck-bed was filled with miscellaneous items, it did not contain such items as clothing, bedding, household goods that would be found in the possession of a person moving

18.     APD arrested Michaud and photographed the truck, but it did not remove the contents from the truck-bed or catalogue them.[7]  See PSR ¶ 15, at 5.

19.     Instead, APD contacted the owner of the stolen truck, James Lyke, Michaud's former employer, and arranged to return the truck to him.  See April 11 Tr. at 17:5-20 (Mendenhall, Vanbrandwijk).

20.     APD returned the truck and all of the contents in the bed without taking possession of them, even though Lyke told APD that the items in the truck-bed were not his.  See April 11 Tr. at 17:21-18:4 (Mendenhall, Vanbrandwijk).

21.     APD told Lyke that it was his "lucky day" and that the items found in the truck were his to keep.  See April 11 Tr. at 34:22-35:15 (Fooks, Vanbrandwijk).

22.     The next day, FBI special agent Jacob Vanbrandwijk learned of the arrest and contacted Lyke to retrieve from him the items found in the truck.  See April 11 Tr. at 18:5-19 (Mendenhall, Vanbrandwijk).

---

residences.  See FOF ¶ 14.  Moreover, FBI searched Michaud's then-residence and there found possessions belonging to him, see  FOF ¶ 15, suggesting that Michaud did not have on his person or in his truck everything that he owned or possessed.  These facts supply further reason to think he did not have in the truck-bed the Tripp Lite device and Fostex speaker.  As the Court finds and discusses below, Michaud had already sold those items -- along with other stolen, unrecovered items -- to fund his drug addiction, which explains the items' disappearance.  See FOF ¶ 33; infra n.10.

[7]APD's failure to retain and catalogue items of potential evidentiary value violated department policy.  Cf. Albuquerque Police Dep't, 2-73 Collection, Submission, and Disposition of Evidence and Property 5, 14 (2022), https://public.powerdms.com/COA/tree/documents/88 (describing APD procedures for collection and disposition of items found at crime scenes)(last visited January 2, 2024).

23.     Vanbrandwijk found Lyke to be honest and forthcoming in this interaction and other interactions later during the FBI's investigation into Michaud's crime.  See April 11 Tr. at 41:25-42:7 (Mendenhall, Vanbrandwijk); id. at 26:11-2717 (Mendenhall, Vanbrandwijk).

24.     Vanbrandwijk arrived at Lyke's home the next day.  See April 11 Tr. at 18:5-19 (Mendenhall, Vanbrandwijk).

25.     Lyke had brought out into the courtyard of his home the items he said were found in the truck-bed that were not his.  See April 11 Tr. at 18:20-19:10 (Mendenhall, Vanbrandwijk).

26.     FBI agents photographed and catalogued these items.  See April 11 Tr. at 19:17-20:5 (Mendenhall, Vanbrandwijk).

27.     The FBI also documented items from the truck that Lyke had laid out in a room in his house.  See April 11 Tr. at 23:14-23 (Mendenhall, Vanbrandwijk).

28.     Besides the items that Lyke identified as not belonging to him from the truck, the FBI did not search the rest of Lyke's house for other items that might have been in the truck, but that Lyke might have retained in his home instead of producing for the FBI's review.[8]  See April 11 Tr. at 30:13-16 (Fooks, Vanbrandwijk).

_____

[8]Much of the dispute at the hearing centers on this topic -- namely, what might have happened to the truck-bed items in between the time APD handed them off to Lyke and the time the FBI retrieved them from him.  Maintaining that the Tripp Lite and Fostex devices were in the truck when APD arrested him, Michaud suggests that Lyke subsequently retained or stole those items.  See April 11 Tr. at 59:13-60:2 (Fooks)("[I]f I was Mr. Lyke, and I had some items that I had my eye on, that would be a perfect time to separate them from the other items I was willing to part with.").  Michaud offered evidence that Lyke was, like Michaud, a drug addict and suggested that Lyke retained the stolen items to pawn later to support Lyke's drug habit.  See April 11 Tr. at 49:25-50:13 (Fooks, Michaud); id. April 11 Tr. 54:15-18.  Michaud highlighted that the FBI relied on Lyke to produce whatever items were found in the truck which were not his, casting doubt on Lyke's credibility and suggesting that he lied about having produced all the items in the truck.  See April 11 Tr. at 59:13-60:2 (Fooks).  The United States in turn emphasized that the only basis for doubting Lyke's credibility is Michaud's own, self-serving testimony at the hearing.  See April 11 Tr. at 57:6-18 (Mendenhall).

Michaud alleges specifically that three large duffle bags "contain[ing] stolen items from the Sandia Crest crime scene," went missing between the time that APD arrested him and the time that FBI retrieved the items from Lyke, and he suggests that Lyke is responsible for these bags' disappearance.  April 11 Tr. at 60:21-25 (Fooks). The basis for these allegations is contained in a set of photographs: two photographs depict the truck on the night that APD arrested Michaud, in which the bed of the pickup truck can be seen full of items; four photographs depict the items that the FBI documented the next day when they retrieved the truck-bed items from Lyke.  See Photograph of Truck A at 1 (Defendant's Exhibit A); Photograph of Truck B at 1 (Defendant's Exhibit H); Photograph of Items Recovered A at 1 (Defendant's Exhibit B);  Photograph of Items Recovered B at 1 (Defendant's Exhibit C); Photograph of Items Recovered C at 1 (Defendant's Exhibit D); Photograph of Items Recovered D at 1 (Defendant's Exhibit E); April 11 Tr. at 7:5-6 (Court)(admitting into evidence Defendant's Exhibits A through F); April 11 Tr. at 39:10-11 (Court)(admitting into evidence Defendant's Exhibit H).  Michaud alleges that three bags seen in the two night-of-arrest photographs are not seen in pictures taken the next day when the FBI photographed the items recovered from Lyke's house.  See April 11 Tr. at 60:3-25 (Fooks).  He suggests that Lyke retained for himself these three bags, which contained at least the Fostex speaker and the Tripp Lite device.

The Court does not credit Michaud's discussion of the import of these photographs.  What is depicted in the photos of the truck upon Michaud's arrest cannot be made out clearly: the photographs are dark, because they were taken at night, and there are so many items jumbled together in the truck-bed that it is difficult to differentiate among them.  Cf. Photograph of Truck A at 1; Photograph of Truck B at 1.  The Court cannot tell if there are items pictured in the time-of-arrest photographs that are missing from subsequent photographs of the items recovered from Lyke's house.  It is just as likely that the same items are pictured in both sets of photographs, but that, because of differences in lighting, the same items appear differently in the two sets of photographs.

Michaud's story overall is improbable, moreover, because he offers no explanation why Lyke stole only these two items.  If Lyke was indeed a thief as Michaud suggests, there is little reason why Lyke would not also pilfer other items for himself: APD had deposited in his care a truck full of electronic devices and other items, items small enough that if he kept them for himself, telling FBI he had not seen them, no one would have been the wiser.  The FBI identified many other items as unrecovered.  See PSR ¶ 21, at 6 ("FBI has confirmed 8 out of 10 standby batteries, 240-volt portable heater and four power inserters were not recovered. . . ."); Addendum at 1-2 (identifying several items stolen from Code 3, Relevant Radio and Rocky Mountain as unrecovered).  Michaud, however, does not suggest that Lyke also retained those items; Michaud offers no explanation why Lyke is responsible only for some items' disappearance, and not other items'.  Moreover, the FBI agent involved stated that he found Lyke to be forthright.  See April 11 Tr. at 41:25-42:7 (Mendenhall, Vanbrandwijk).  Michaud's motivation may be to shunt off on Lyke responsibility for the loss of two of the most expensive items that Michaud stole.  See Addendum at 1-2 (identifying the Tripp Lite device and Fostex speaker as two of the most expensive items stolen).  The more likely explanation, is that the Tripp Lite device and Fostex speaker were not in the truck when APD arrested Michaud, see FOF ¶ 17; supra n.6, because Michaud already had sold them to support his drug habit, see infra FOF ¶ 33; n.10; accordingly, Lyke could not subsequently have stolen the items.

29.     The FBI then took possession of recovered items.  See PSR ¶ 17, at 6.

30.     Although Code 3 had reported a Tripp Lite device stolen and Relevant had reported

a Fostex speaker as stolen, neither of these items were recovered from Lyke's home nor from a

search of Michaud's residence.  See Addendum at 1-2; April 11 Tr. at 26:5-10 (Mendenhall,

Vanbrandwijk).

31.     Lyke did not retain for himself or otherwise steal the unrecovered Tripp Lite device

and the unrecovered Fostex speaker.[9]

32.     Several pieces of electrical equipment were never recovered that Michaud stole

from the Sandia Crest facility, including from Code 3, Relevant Radio, City Link, and Rocky

Mountain.  See PSR ¶ 21, at 6; Addendum at 1-2.

33.     To acquire money to fund his drug addiction, Michaud sold the items that he stole

from the Sandia Crest facility that have not been recovered, including the Tripp Lite device and

Fostex speaker.[10]

---

[9]The Court explains above its rationale for this finding of fact.  See supra nn.7-8.  Because
the Court finds that the Tripp Lite device and the Fostex speaker were not in Michaud's truck when
APD arrested him, see FOF ¶ 17, the Court finds that Lyke did not steal those items, because they
were not among the items that APD deposited in Lyke's care.

[10]The Court makes this finding of fact for the following reasons.  The Court finds that it is
more likely than not that Michaud sold all the stolen, unrecovered items to acquire money to fuel
his drug addiction.  Michaud was addicted to fentanyl and to methamphetamine, and, at the time
of the burglary, he was a daily user of fentanyl and a near-daily user of methamphetamine.  See
PSR ¶ 64, at 14.  Michaud admits that he stole the following items from the Sandia facility that
were not subsequently recovered: at the hearing he admitted specifically that he stole the Tripp
Lite device and Fostex speaker,  see April 11 Tr. 51:5-16 (Mendenhall, Michaud)("'You stole this
Tripp Lite Smart Pro that we've been talking about; is that right?' 'That's correct.' 'And you also
stole this Fostex speaker that we've been talking about?' 'That is correct.' 'You stole it from the
Sandia Crest Communication site?' 'That is correct.' 'In November of 2020?' 'Correct.'"); he,
moreover, does not dispute the PSR and Addendum's findings that he stole several other pieces of
electrical equipment.  See PSR ¶ 21, at 6 ("[T]he FBI has confirmed 8 out of 10 standby batteries,

## PROCEDURAL BACKGROUND

The United States indicted Michaud on May 12, 2021.  See Indictment, filed May 12, 2021 (Doc. 16)("Indictment").  The Indictment's first count charges Michaud with unauthorized access to a protected computer in violation of 18 U.S.C. § 1030(a)(2) and 18 U.S.C. § 1030(c)(2)(A), and with aiding and abetting that crime in violation of 18 U.S.C. § 2.  See Indictment at 1.  Its second count charges Michaud with being an unlawful user of a controlled substance in possession of ammunition in violation of 18 U.S.C. § 922(g)(3) and 18 U.S.C. § 924.  See Indictment at 1.  The Indictment sets forth the relevant conduct thus:

> On or about December 14, 2020, in Bernalillo County, in the District of New Mexico, the defendant, COREY MICHAUD, intentionally accessed a computer without authorization, and thereby obtained information from a protected computer.
>
> In violation of 18 U.S.C. §§ 1030(a)(2) and (c)(2)(A), and 18 U.S.C. § 2.

---

240-volt portable heater and four power inserters were not recovered. . . ."); Addendum at 1-2 (listing several items that Michaud stole that were not recovered).

The most likely explanation for these items' disappearance is that Michaud sold them to fund his drug addiction.  As Michaud himself suggests, "what drug addicts do" is "take items from other individuals . . . [and] sell them for whatever money they can get to feed their habit."  April 11 Tr. 54:15-18 (Fooks).  Statistical information bears out Michaud's observation: almost half of all theft crimes are committed by persons addicted to drugs, most often to acquire money with which to purchase more drugs.  See Off. of Nat'l Drug Control Pol'y, Improving the Measurement of Drug-Related Crime xi-xii (2013)(reporting that for "crimes committed by someone who was either using a drug on a near-daily basis or has met clinical criteria for dependence . . . the proportion of property crimes involving drugs . . . exceed[s] 50 percent of offenses for robbery, burglary, motor vehicle theft, and larceny").  As discussed above, see supra n.9, the Court finds unpersuasive Michaud's sole explanation for some of the items' disappearance -- that Lyke stole the Tripp Lite device and the Fostex speaker when APD deposited them in Lyke's care.  See FOF ¶ 31; supra n.9.  It is also unlikely that Michaud merely lost or misplaced the valuable electronic items that he admits he stole.  Instead, the best explanation for those items' ultimate disappearance -- one which the Court finds is more likely than not what happened, sufficient for the applicable fact-finding standard, see United States v. Williams, 2020 WL 4016108, at *6 (citing United States v. Olsen, 519 F.3d at 1105) -- is that Michaud sold those items for drug money in the two months between November 2020, when he stole them, and February 2021, when APD arrested him.

. . .

On or about February 2, 2021, in Bernalillo County, in the District of New Mexico, the defendant, COREY MICHAUD, knowing that he was an unlawful user of and addicted to any controlled substance, knowingly possessed ammunition in and affecting commerce.

In violation of 18 U.S.C. §§ 922(g)(3) and 924.

Indictment at 1.  The parties executed a plea agreement pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure on September 1, 2021, which recommends a sentence of six months' imprisonment.  See Plea at 1, 6, 12.  Michaud admits in the Plea Agreement to the following facts:

I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

On or about December 14, 2020, I intentionally accessed a computer without authorization and obtained information from that computer. The computer was connected to the internet, and I knew that I was not authorized to access the computer because I had previously stolen it from a business at the Sandia Crest Communications Site. I accessed the computer from my then-residence in Albuquerque, New Mexico, which is in Bernalillo County.

On or about February 2, 2021, I knowingly possessed ammunition, namely, 60 rounds of 5.56mm green-tip ammunition. I possessed the ammunition in Bernalillo County, New Mexico. At the time, I knew that I was an unlawful user of and addicted to a controlled substance. The ammunition had previously travelled in interstate commerce.

Plea Agreement ¶ 9, at 5.  Michaud's plea agreement did not contain a provision specifically providing for restitution.  See Plea Agreement ¶ 4, at 2-3 (recognizing that potential penalties for Michaud's two offenses of conviction includes "restitution as may be ordered by the Court"); id. ¶ 11, at 6 ("The United States and the Defendant recommend . . . a specific sentence of six months' imprisonment is [] appropriate. . . .   The remaining components of the Defendant's sentence, including . . . any . . . restitution . . ., shall be imposed by the Court after the presentation of evidence and/or argument.").  Michaud plead guilty before the Honorable B. Paul Briones, United

States Magistrate Judge for the United States District Court for the District of New Mexico.  The

colloquy as to the factual basis for Michaud's convictions went thus:

> Briones, J.:    I'm going to ask you to tell me in your own words, what did you do that makes you guilty of the crimes as charged?
>
> Michaud:        For Count I, possessed and accessed a protected computer knowingly.  And for Count 2, I was under the influence or addicted to a controlled substance, and possessed ammunition at the same time.
>
> Briones, J.:    When you took possession that computer, were you authorized to do so?
>
> Michaud:        No, I was not.
>
> Briones, J.:    Did you have authorization to even access the computer?
>
> Michaud:        No, I did not.
>
> Briones, J:     How did you get to it? In other words, was it at your worksite, or what was it?
>
> Michaud:        It was a building I knew of, and I went in, took the computer and accessed it.
>
> Briones, J:     Okay. And you knew you didn't have the lawful right to be in possession of it?
>
> Michaud:        Yes.

Audio Recording of Plea Hearing at 10:58:30-11:02:29, taken September 10, 2021 (Briones, J.,

Michaud)("September 10 Hearing").[11]

At the sentencing hearing on October 29, 2021, the Court imposed the recommended

sentence of six months' imprisonment and also imposed three years' supervised release, during

---

[11]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

- 13 -

which time Michaud must undergo substance abuse treatment.  See Judgment in a Criminal Case,

filed November 3, 2021 (Doc. 38).  At the sentencing hearing the restitution issue was left

unresolved.  See Transcript of Hearing at 18:9-19:3, taken October 29, 2021 (Court, Gerson)("Oct.

29 Tr.").  The United States suggested that it lacked a federal statute that could capture precisely

Michaud's underlying burglary:

> We permit [sic] this case with recognition of [the] underlying offense of burglary
> of these radioed stations is a state law offense the way that we're able to reach this
> conduct is through Mr. Michaud's misuse of a piece of electronics that was stolen
> during that burglary, and finding him to be in possession of ammunition at the time
> he was taken into custody.

See October 29 Tr. at 9:25-10:7 (Gerson).

After the United States Probation Office ("USPO") filed its Addendum identifying victims

to whom Michaud owes restitution under the MVRA, an evidentiary hearing was held on the

subject on April 11, 2022.  See Addendum at 1; April 11 Minutes at 1.  USPO identifies four

businesses that Michaud's theft at the Sandia Crest facility harmed -- City Link Fiber and Rocky

Mountain Ham Radio, in addition to Code 3 and Relevant Radio.  See Addendum at 2.

Incorporating both losses because of unrecovered property and losses because of disrupted

operations, USPO calculated the victims' losses at the following values: (i) Code 3's losses at

$5,405.94; (ii) Relevant Radio's losses at $450.00; (iii) City Link Fiber's losses at $400.00; and

(iv) Rocky Mountain Ham Radio's losses at $229.00.  See Addendum at 1-2.  Before the

evidentiary hearing, the FBI recovered one item valued at $730.00 belonging to Code 3, thus

reducing the restitution owed to Code 3 to $4,675.94.  See April 11 Tr. at 4:20-5:7 (Fooks,

Mendenhall); Addendum at 1.  At the time of the evidentiary hearing, two stolen items that the

USPO identifies as still unrecovered are still outstanding -- the $2,006.40 Tripp Lite device and

the $260.00 Fostex speaker.  See April 11 Tr. at 5:2-9 (Fooks, Mendenhall).  At the hearing,

Michaud contested whether he was liable for the loss of Code 3's Tripp Lite device and Relevant Radio's Fostex speaker, because, he asserted, APD was alleged negligent in turning over to Lyke a truck full of miscellaneous items, and Lyke had retained those items for himself when the FBI visited his home to retrieve them.  See April 11 Tr. at 5:6-15(Fooks); id. at 7:7-25 (Fooks).

The bulk of the hearing was devoted to this factual issue, and Michaud devoted little time to explaining why, under the MVRA, he should avoid restitution liability if Lyke had retained the items for himself.  Michaud's position is that, because "[t]he only reason . . . law enforcement didn't locate [the Tripp Lite or Fostex devices] . . . is [that] Mr. Lyke held on to them," then "the Government has [not] met the burden to establish Mr. Michaud is liable for . . . those items."  April 11 Tr. at 56:16-22 (Fooks).  Although the Government did not articulate a theory for what happened to the missing items, it maintained that the "items were not given to [Lyke]," that "it wasn't through APD's negligence that they were lost," and that "Mr. Michaud would be responsible for restitution."  April 11 Tr. at 8:12-19 (Mendenhall).  The United States argued that it "met its burden[, because] the agents went out there and documented their search[for] what they were looking[;] they did not see these items[;] those items weren't there," and the "loss of these items doesn't stem therefore from the APD's purported negligence [but] from Mr. Michaud taking these items from the Sandia Crest."  April 11 Tr. at 58:8-18 (Mendenhall).  The Government did not devote time to whether, if Lyke did retain the items for himself because of APD's conduct, Michaud would remain liable for restitution.  At the conclusion of the hearing, the Court indicated that it would issue a Memorandum Opinion and Order on the dispute.  See April 11 Tr. at 61:8-13 (Court).

## LAW REGARDING RESTITUTION

The United States Court of Appeals for the Tenth Circuit "doesn't treat restitution as a penalty." United States v. Williams, 10 F.4th 965, 975 (10th Cir. 2021). Its goal, instead, is "to restore the victim to the position occupied before the crime." United States v. Maynard, 984 F.3d 948, 969 (10th Cir. 2020). Federal courts have no inherent power to order restitution; they may order restitution only when a statute authorizes an award. See United States v. Delano, 981 F.3d 1136, 1139 (10th Cir. 2020)(citing United States v. Gordon, 480 F.3d 1205, 1210 (10th Cir. 2007)). In 1982, Congress enacted the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663 ("VWPA"), which authorizes district courts to, in their discretion, order restitution for victims of criminal conduct. See 18 U.S.C. § 3663(a)(1)(A)(stating that a district court "may order" that a defendant make restitution to any victim of an offense or, if the victim is deceased, to the victim's estate). See also United States v. Quarrell, 310 F.3d 664, 677 (10th Cir. 2002)("Under the VWPA, the court has discretion to order restitution 'when sentencing a defendant convicted under this title . . . other than an offense described in section 3663A(c).'")(quoting 18 U.S.C. § 3663(a)(1)(A)). The VWPA applies when a court sentences

> a defendant convicted of an offense under this title, section 401, 408(a), 409, 416, 420, or 422(a) of the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856, 861, 863) (but in no case shall a participant in an offense under such sections be considered a victim of such offense under this section), or section 5124, 46312, 46502, or 46504 of title 49, other than an offense described in section 3663A(c) . . . .

18 U.S.C. § 3663(a)(1)(A). The VWPA requires that a court consider the defendant's economic circumstances before ordering restitution. See 18 U.S.C. § 3663(a)(1)(B).

In 1996, Congress enacted the MVRA, which made restitution mandatory in certain cases, "particularly crimes of violence and theft crimes with identifiable victims who 'suffered a physical

injury or pecuniary loss.'" <u>United States v. Serawop</u>, 505 F.3d 1112, 1117 (10th Cir. 2007)(quoting

18 U.S.C. § 3663A(c)(1)).  The MVRA applies

> **(c)**
>
>> **(1)** . . . in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense --
>>
>>> **(A)**     that is --
>>>
>>>> **(i)**     a crime of violence, as defined in section 16;
>>>>
>>>> **(ii)**    an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit; or
>>>>
>>>> **(iii)**   an offense described in section 1365 (relating to tampering with consumer products); and
>>>
>>> **(B)**     in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.
>>
>> **(2)**     In the case of a plea agreement that does not result in a conviction for an offense described in paragraph (1), this section shall apply only if the plea specifically states that an offense listed under such paragraph gave rise to the plea agreement.

18 U.S.C. § 3663A(c)(1).  <u>Cf</u>. <u>United States v. Benally</u>, 19 F.4th 1250, 1258 (10th Cir.

2021)(holding that "the MVRA does not apply to any criminal offense that has a *mens rea* of

recklessness," because such offenses are not "crime[s] of violence")("<u>Benally</u>").  Unlike the

VWPA, the MVRA does not permit a court to consider a defendant's economic circumstances

- 17 -

when it imposes restitution.  See United States v. Serawop, 505 F.3d at 1118 (citing 18 U.S.C.

§ 3664(f)(1)(A)).

Other than the MVRA's mandatory requirement of restitution and the MVRA's

requirement that a court not consider a defendant's economic circumstances, the "provisions of

the VWPA and MVRA are nearly identical in authorizing an award of restitution."  United States

v. Serawop, 505 F.3d at 1118 (quoting United States v. Randle, 324 F.3d 550, 555-56 & nn.2-3

(7th Cir. 2003)). The term "victim," under both statutes means

> a person directly and proximately harmed as a result of the commission of an
> offense for which restitution may be ordered . . . .  In the case of a victim who is
> under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian
> of the victim or representative of the victim's estate, another family member, or any
> other person appointed as suitable by the court, may assume the victim's rights
> under this section, but in no event shall the defendant be named as such
> representative or guardian.

18 U.S.C. § 3663A(a)(2); 18 U.S.C. § 3663(a)(2).  Cf. United States v. Casados, 26 F.4th 845, 847

(10th Cir. 2022)(disallowing "restitution for . . . expenses that were incurred not by the victim . . .

but instead by the victim's representative").  Accordingly, both statutes have a proximate cause

requirement in ascertaining which persons can recover restitution for a loss caused by the

defendant's offense of conviction.  See 18 U.S.C. § 3663A(a)(2); 18 U.S.C. § 3663(a)(2).  Both

statutes also state that, where an offense "resulting in bodily injury also results in the death of a

victim," a court may order a defendant to "pay an amount equal to the cost of necessary funeral

and related services."  18 U.S.C. § 3663(b)(3); 18 U.S.C. § 3663A(b)(3).  Additionally, both the

VWPA and MVRA provide that, "to the extent that the court determines that the complication and

prolongation of the sentencing process resulting from the fashioning of any order of restitution

outweighs the need to provide restitution to any victims, the court may decline to make such an

order."  18 U.S.C. §§ 3663(a)(1)(B)(ii), 3663A(c)(3)(B).

Under both statutes, any dispute "as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence," 18 U.S.C. § 3664(e), and "[t]he government bears the burden of proving the amount of loss," United States v. Wells, 873 F.3d 1241, 1265 (10th Cir. 2017)(quoting United States v. Gallant, 537 F.3d 1202, 1247 (10th Cir. 2008))("Wells"). Cf. Wells, 873 F.3d at 1265 ("[T]he government . . . bears the same burden regarding the subordinate question of what harms are properly included in the loss calculation because they are 'a result of the offense.'" (quoting 18 U.S.C. § 3664(e)); United States v. Dickerson, 678 F. App'x 706, 723 (10th Cir. 2017)("The law does not require the government to make a showing at the restitution hearing where the facts underlying the restitution amounts are undisputed.").[12]  As to the "burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents," the burden is the defendant's.  18 U.S.C. § 3664(e).  "The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires."  18 U.S.C. § 3664(e).

---

[12]United States v. Dickerson, 678 F. App'x 706, 723 (10th Cir. 2017) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Dickerson,  United States v. Pielsticker, 678 F. App'x 737, 748 (10th Cir. 2017), United States v. Zander, 742 F. App'x 358, 364 (10th Cir. 2018), United States v. Ward, 182 F. App'x 779, 802 (10th Cir. 2006), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion Order.

Although MVRA recovery need not be calculated "with exact precision," <u>United States v. Anthony</u>, 942 F.3d 955, 970 (10th Cir. 2020), courts can approach the calculation in a variety of ways:  "[A] district court may, for different types of property, determine that fair market value, replacement cost, . . . or another measure of value is most appropriate."  <u>United States v. Howard</u>, 887 F.3d 1072, 1078 (10th Cir. 2018).  Because the goal of restitution is to restore the pre-offense status quo, however, the district court should avoid giving victims a windfall.  <u>See United States v. Ferdman</u>, 779 F.3d 1129, 1139 (10th Cir. 2015); <u>United States v. Calderon</u>, 944 F.3d 72, 97 (2d Cir. 2019)("The MVRA provides redress to the victims of fraud, but it does not supply a windfall for those who independently enter into risky financial enterprises through no fault of the fraudsters.").  In identifying the right award, courts must rely on strong evidence; while a victim's lost profits are recoverable, this calculation can make for a more difficult restitution-awarding enterprise.  <u>Cf.</u>  <u>United States v. Pielsticker</u>, 678 F. App'x 737, 748 (10th Cir. 2017)(approving result where "the district court had testimony to support its loss finding" and noting that more confidence can be placed in an award for stolen checks and cash because there was no need to "value property such as [consumer goods] or to determine . . . lost profits"); <u>United States v. Dickerson</u>, 678 F. App'x at 723 (noting the desirability of "verif[ying] . . . [loss] totals with the victim . . . businesses" and of not basing calculations on "vague expenses").

The restitution a defendant owes his victim may be offset -- reduced -- in some circumstances.  <u>See United States v. Parker</u>, 553 F.3d 1309, 1324 (10th Cir. 2009)(evaluating whether goods misrepresented to victim had resale value to offset restitution award).  "To the extent [a defendant] claim[s] he [is] entitled to an offset[,] . . . he [bears] the burden of proving the amount of that offset."  <u>United States v. Howard</u>, 887 F.3d at 1079.  <u>See also</u>  <u>United States v. Serawop</u>, 505 F.3d 1112, 1127, 1128 nn. 5-6 (10th Cir. 2007).  <u>Cf. United States v. Arnold</u>, 878

F.3d 940, 946 (10th Cir. 2017)(holding that forfeiture payments to the government cannot "be used to offset restitution" to the victim). The MVRA's offsets rule implicates the issue of insurance: With respect to insurance, 18 U.S.C. § 3664(f)(1) provides that in "no case shall the fact that a victim has received . . . [insurance] compensation . . . be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(1)(B). Furthermore, 18 U.S.C. § 3664(j) provides that restitution "be paid to the person . . . obligated to provide . . . compensation" -- i.e., the insurer -- so long as the victim, if ordered restitution, is paid first. Thus, in United States v. Wooten, 377 F.3d 1134 (10th Cir. 2004)("Wooten"), the Tenth Circuit affirmed the award of $17,751.58 in restitution for the loss of two motor vehicles, all of which went to insurance companies. See 377 F.3d at 1144. See also United States v. Crawford, 169 F.3d 590, 593 (9th Cir. 1999)("Absent any showing that the civil proceeding resulted in compensation for the "same loss" under § 3664(j)(2), the district court was correct in its conclusion that there is no basis for reducing the disputed restitution order."). In United States v. Francisco, No. 06-1015, 2008 WL 2367253 (D.N.M. Feb. 1, 2008) (Browning, J.), the Court held: "Regardless of the Yazzie's possible insurance recovery, however, Francisco continues to have an obligation to pay restitution." 2008 WL 2367253, at *10.

District courts order restitution regularly, but rarely is restitution ever paid. See Wayne R. LaFave et al., Criminal Procedure 276 n.46.70 (4th ed. 2021-2022 supp.)("More than 90% of criminal restitution ordered in federal court is never collected." (citing GAO, Federal Criminal Restitution: Most Debt is Outstanding and Oversight of Collections Could Be Improved 25 (GAO-18-203, 2018))). Nonetheless, to order restitution without legal authority is grounds for reversal. The Tenth Circuit has held that a wrongful restitution order "affect[s] the fairness, integrity, and public reputation of judicial proceedings." United States v. Mendenhall, 945 F.3d 1264, 1270 (10th Cir. 2019)(citing United States v. Gordon, 480 F.3d at 1212)("Mendenhall").

**LAW REGADING THE MVRA'S PROXIMATE CAUSATION REQUIREMENT**

For a court to order a defendant to pay restitution to a victim under the MVRA, the defendant's offense of conviction must be a proximate cause of the victim's loss.  See 18 U.S.C. § 3663A(a)(2); United States v. Zander, 794 F.3d 1220, 1233 (10th Cir. 2015)(determining that "before awarding restitution, the district court must determine whether the crime of conviction was the proximate cause of the victim's loss").  At the outset, the MVRA's proximate causation requirement is essential to ascertain who is a "victim" for the MVRA's purposes.  See 18 U.S.C. § 3663A(a)(2)("[T]he term 'victim' means a person directly and proximately harmed as a result of the commission of the offense for which restitution may be ordered . . . .").  The concept of proximate causation plays a role not only in ascertaining who is a "victim" under the MVRA, but also in limiting which losses a victim may recover in restitution.

Under the MVRA, restitution is available only for losses that the defendant's offense of conviction causes a victim.  See Mendenhall, 945 F.3d at (no restitution recoverable "for losses related to, but not arising directly from, [the] defendant's offense of conviction").  The Supreme Court of the United States' case Hughey, 495 U.S. 411, set out in 1990 the overall framework for the connection that restitution awards require between a defendant's offense of conviction and the victim's harms.  It dealt with restitution under the VWPA.  There, the defendant executed a scheme to steal a number of credit cards and used them without authorization, but was indicted for and pled guilty to a single count of unauthorized device use, tied to a single victim; restitution was ordered, however, as to other victims, but the Supreme Court rejected that result.  See Hughey, 495 U.S. at 422 ("Petitioner pleaded guilty only to the charge that he fraudulently used the credit card of Hershey Godfrey. Because the restitution order encompassed losses stemming from alleged fraudulent uses of cards issued to persons other than Godfrey, such portions of the order are

invalid.").  The Supreme Court rejected the proposition that the district court could order restitution "beyond [the] amount involved in the offense of conviction when there is a significant connection between the crime of conviction and similar actions justifying restitution."  Hughey, 495 U.S. at 414 (quoting United States v. Hughey, 877 F.2d 1256, 1264 (5th Cir. 1989)).  Congress subsequently amended the VWPA, and later enacted the MVRA using the same language, see 18 U.S.C. § 3663A(a)(2), to broaden the conduct upon which restitution can be based when the offense involves a scheme, as Hughey's did, see 18 U.S.C. 3663(a)(2) (allowing restitution "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, [to] any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern"), but otherwise sought to embody the Hughey result for the relationship required between a victim's harms and the conduct underlying the defendant's offense of conviction, see United States v. Penn, 969 F.3d 450, 459 (5th Cir. 2020)("[T]he definition of 'victim' in § 3663(a)(2) . . . more or less codifies the Hughey rule.")("Penn").  See United States v. Reed, 80 F.3d 1419, 1423 (9th Cir. 1996)(stating that "the 1990 [VWPA] amendment was intended to overrule Hughey" only as to scheme offenses, i.e., overturning such holdings "'[e]ven where the offense of conviction involves a conspiracy or scheme, restitution must be limited to the loss attributable to the specific conduct underlying the conviction'" (quoting United States v. Sharp, 941 F.2d 811, 815 (9th Cir. 1991)))("Reed"); United States v. Innarelli, 524 F.3d 286, 290 & n.4 (1st Cir. 2008)(explaining that intended loss can be used "for purposes of determining a defendant's sentence" under the Guidelines, but "for purposes of determining the restitution portion of a defendant's punishment, only actual loss may be taken into account").  There thus exists an important distinction for restitution purposes between offenses that do "involve[] as an

element a scheme, conspiracy, or pattern," 18 U.S.C. § 3663(a)(2), 18 U.S.C. § 3663A(a)(2), and those that do not.

Whether MVRA recovery is available turns in part on how the indictment captures the underlying conduct. Cf. United States v. Dodson, No. 21-7046, 2022 WL 1409572, at *3-4 (10th Cir. May 4, 2022)(affirming restitution award for arson committed during early hours of September 16 where indictment "charged Mr. Dodson with setting the fire '[o]n or about September 15'" (quoting Record on Appeal, Vol. I at 8)(emphasis in original)). For example, the losses must stem from conduct occurring within the temporal window to which the indictment speaks and only to the subjects mentioned therein. See United States v. Allen, 983 F.3d 463, 472-73 (10th Cir. 2020)("[A] restitution order cannot compensate for losses stemming from conduct that occurred outside the charged period."); Mendenhall, 945 F.3d at 1266 (denying restitution awards for sixty-two stolen firearms where the defendant was only charged with and convicted of possessing three such firearms). "[T]he government can avoid restitution problems in the way it charges criminal conduct or reaches plea agreements." Mendenhall, 945 F.3d at 1269; id. at 1268-69 ("[In United States v. Burns, 800 F.3d 1258 (10th Cir. 2015),] the information was drafted broadly enough to capture the five disputed pieces of mail . . . [and thus] the charged conduct . . . was broad enough to encompass the restitution ordered."). A plea agreement that does not call for the defendant to plead guilty to an offense mandating restitution under § 3663A(c)(1) may yet give rise to MVRA restitution "if the plea specifically states that an offense listed under [that section] gave rise to the plea agreement." 18 U.S.C. § 3663A(c)(2).

A "victim" under the MVRA may not recover all the losses that the defendant's convicted offense causes. Both the MVRA's statutory provisions and the concept of proximate causation limit which losses -- among the set of losses that the defendant's convicted offense causes -- are

recoverable in restitution. See Lagos v. United States, 138 S. Ct. 1684, 1689 (2018)("Lagos")(denying MVRA recovery for costs incurred in a victim's private investigation into losses the offender's crime caused, and noting that Congress chose not to "specifically require restitution for 'the full amount of the victim's losses'" (quoting 18 U.S.C. §§ 2248(b), 2259(b), 2264(b), 2327(b))). The statute, for example, limits restitution for expenses for treatment of physical injury to those treatments that are medically necessary. See 18 U.S.C. § 3663A(b)(2)(A)("The order of restitution shall require that [a] defendant . . . in the case of an offense resulting in bodily injury to a victim . . . pay an amount equal to the cost of necessary medical and related professional services . . . .").

In addition to statutory limits, a proximate causation requirement also limits which losses a victim may recover under the MVRA. See United States v. Zander, 794 F.3d at 1233. In United States v. Zander, the Tenth Circuit said that, "before awarding restitution, the district court must determine whether the crime of conviction was the proximate cause of the victim's loss." United States v. Zander, 794 F.3d at 1233 (citing United States v. West, 646 F.3d at 751; United States v. Diamond, 969 F.2d 961, 967-68 (10th Cir. 1992)). A victim may recover in restitution only those losses that the defendant's convicted offense proximately causes. See United States v. Zander, 794 F.3d at 1233. "[A]nswering [the proximate causation] question generally entails an inquiry into the foreseeability of the harm." Wells, 873 F.3d at 1268. The Tenth Circuit has suggested that "[a] restitution order is authorized if the defendant created the circumstances under which the harm or loss occurred." Wells, 873 F.3d at 1268 (quoting United States v. Spinney, 795 F.2d 1410, 1417 (9th Cir. 1986)).

Which losses are recoverable in restitution under the MVRA is analogous to the role that proximate causation plays in other statutory contexts. See Paroline v. United States, 572 U.S. 434,

445-48 (2014)("Paroline")(holding that, under 18 U.S.C. § 2259, restitution is proper "only to the extent the defendant's offense proximately caused a victim's losses").  For example, interpreting a statute providing restitution to victims of child sexual exploitation for losses that the defendant's conduct "caus[es]," the Supreme Court read into the statute a proximate cause limitation -- thus permitting restitution, as in the MVRA, only for those losses that the defendant's offense proximately caused.  See Paroline, 572 U.S. at 448 (allowing restitution "only to the extent the defendant's conduct proximately caused a victim's losses").  This move -- reading in a proximate cause requirement -- is a familiar one.  See Paroline, 572 U.S. at 446 ("Given proximate cause's traditional role in causation analysis, the Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one."  (citing Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265-68 (1992); Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 529-36 (1983)).   See CSX Transp. v. McBride, 131 S. Ct. 2630, 2646 (2011)(Roberts, C.J., dissenting)("We have applied the standard requirement of proximate cause to actions under federal statutes where the text did not expressly provide for it.").  In all these restitution contexts, "[t]he basic question that a proximate cause requirement presents is 'whether the harm alleged has a sufficiently close connection to the conduct' at issue."  Robers v. United States, 572 U.S. 639, 645 (2014)(quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 133 (2014)).  "A requirement of proximate cause . . . serves, inter alia, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity."  Paroline, 572 U.S. at 444-45 (citing Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 838-39 (1996)).

The Tenth Circuit has instructed that, when determining whether the defendant's offense of conviction is a proximate cause of a victim's loss, "[t]he crime of conviction will not be

considered the proximate cause of the loss if there was an intervening cause, unless this intervening cause was 'directly related to the offense conduct.'" United States v. Zander, 794 F.3d at 1233 (quoting United States v. Speakman, 594 F.3d 1165, 1172 (10th Cir. 2010)). Cf. United States v. Wells, 873 F.3d at 1268 (allowing recovery for conduct that apparently "exceeded the scope of the conspiracy" so long as the conduct was "directly related to [the] conspiracy").  A victim's independent actions contributing to loss will not break the chain of the defendant's liability and so not necessarily absolve a defendant's liability; the restitution due a victim because of the defendant's fraud is not lessened because of "how and when the [victim] approved moving forward" so long as the payments would not have been made but-for the wrongful conduct.  United States v. Zander, 742 F. App'x 358, 364 (10th Cir. 2018).  Cf. Robers v. United States, 572 U.S. at 645 (rejecting the proposition that where "a victim receives less money from a later sale [of collateral used to secure a fraudulently obtained loan,] than the collateral was worth when received, the market and not the offender is the proximate cause of the deficiency").  As in other causation inquiries, courts may have to tease out the contributions of various causal factors.  Cf. United States v. Anthony, 942 F.3d 955, 969 (10th Cir. 2019)(requiring the district court to "isolate [the defendant's] share of the [victim's] harm vis-à-vis [another, earlier offender's]" where "the victim's asserted losses overlap with similar harms that occurred before the events at issue").

## NEW MEXICO LAW REGARDING INTERVENING CAUSE

Under New Mexico law, an intervening force may interrupt the chain of causation and thereby supersede the original alleged negligence, product defect, or other grounds for liability, and relieve the defendant of liability.  See Johnstone v. City of Albuquerque, 2006-NMCA-119, ¶ 21, 145 P.3d 76, 83.  "Contributory negligence and independent intervening cause are questions for the jury, unless, as a matter of law, there is no evidence upon which to submit the issue to the

jury." <u>City of Belen v. Harrell</u>, 1979-NMSC-081, ¶ 17, 603 P.2d 711, 714.  "An intervening force is a superseding cause if the intervening force was not foreseeable at the time of the primary negligence." <u>Johnstone v. City of Albuquerque</u>, 2006-NMCA-1191, ¶ 21, 145 P.3d at 83.

New Mexico law identifies suicide as an independent intervening cause that absolves a defendant of liability.  <u>See</u>, <u>e.g.</u>, <u>City of Belen v. Harrell</u>, 1979-NMSC-081, ¶ 17, 603 P.2d at 714. For example, in New Mexico, suicide is a voluntary, deliberate, and intentional act of self-destruction by someone of sound mind.  <u>See</u> <u>Solorzano v. Bristow</u>, 2004-NMCA-136, ¶ 14, 103 P.3d 582, 586.  "The voluntary, willful act of suicide is a new or intervening agency that breaks the chain of causation." <u>Johnstone v. City of Albuquerque</u>, 2006-NMCA-119, ¶ 22, 145 P.3d at 83.  Consequently, where the record reveals such a deliberate, intentional act of suicide, summary judgment is appropriate because proximate causation cannot be proven.  <u>See</u> <u>Johnstone v. City of Albuquerque</u>, 2006-NMCA-119, ¶ 28, 145 P.3d at 85.

In <u>Johnstone v. City of Albuquerque</u>, the Court of Appeals of New Mexico rejected the claim that the decedent's stepfather was responsible for her suicide because the decedent used his gun and he was a police officer. <u>See</u> 2006-NMCA-119, ¶¶ 1-2, 145 P.3d at 78.  The Court of Appeals stated:

> When an individual commits suicide using a gun owned by someone else, the owner of the gun is not liable for the death under settled negligence principles. In the absence of intentional conduct that creates the risk of suicide, or a legally recognized special relationship and knowledge of a specific likelihood of harm that gives rise to a duty to avoid harm, suicide operates as an independent intervening cause of death. In this case, we decline Plaintiff's invitation to abrogate this long-standing precedent. Defendant's sixteen year-old stepdaughter used his firearm to commit suicide. Her estate sued him individually, together with his employer the City of Albuquerque, alleging that Defendant was grossly negligent in leaving his firearm unattended. Summary judgment was entered for Defendant in his individual capacity, dismissing Plaintiff's suit. We affirm.

2006-NMCA-119, ¶ 1, 145 P.3d at 78.  The Court of Appeals noted: "Courts generally decline to impute a duty to the defendant when he neither caused the decedent's uncontrollable suicidal impulse nor had custody of the decedent and knowledge of her suicidal ideation."  2006-NMCA-119, ¶ 10, 145 P.3d at 81 (internal quotation marks omitted).

There are two exceptions to the general rule that a victim's suicide relieves a tortfeasor's liability.  See 2006-NMCA-119, ¶ 11, 145 P.3d at 81. One is when the actor's tortious conduct "induces a mental illness in the decedent from which the death results."  2006-NMCA-119, ¶ 11, 145 P.3d at 81.  The other is when there is a duty that results "from a special relationship between the decedent and the defendant, that presumes or includes knowledge of the decedent's risk of suicide."  2006-NMCA-119, ¶ 11, 145 P.3d at 81.  The Court of Appeals noted that "special relationships are set forth in the Restatement (Second) of Torts §§ 314A, 315-319 (1999)."  2006-NMCA-119, ¶ 11, 145 P.3d at 81.  The Court of Appeals found that neither exception was applicable to the facts in Johnstone v. City of Albuquerque.  See 2006-NMCA-119, ¶ 12, 145 P.3d at 81.  The Court of Appeals rejected the argument that the defendant had a special relationship with the decedent because "New Mexico has not found such a special relationship to exist between parent and child."  2006-NMCA-119, ¶ 12, 145 P.3d at 82.  The Court of Appeals distinguished the relationship between a mental health professional and a patient and the relationship between a parent and child, because of the professional's "knowledge of the patient, a layperson could not reasonably be expected to anticipate the mental health consequences of their acts or omissions."  2006-NMCA-119, ¶ 12, 145 P.3d at 82.

In Solorzano v. Bristow, 2004-NMCA-136, 103 P.3d 582, the Court of Appeals of New Mexico held that a specific duty could exist between a decedent and a defendant who had directly observed the decedent's behavior.  See 2004-NMCA-135, ¶ 21, 103 P.3d at 587.  The decedent in

Solorzano v. Bristow began acting erratically while her mother, the defendant, drove. See 2004-NMCA-135, ¶¶ 2-5, 145 P.3d at 583-84. The decedent "either fell or jumped from a van being driven by [the d]efendant." 2004-NMCA-135, ¶ 2, 103 P.3d at 583. The Court of Appeals would not "indulge" a presumption in favor of suicide because the decedent "fell from the vehicle without any intervention from anyone else." 2004-NMCA-135, ¶ 16, 103 P.3d at 586. The Court of Appeals held, on the facts presented in Solorzano v. Bristow, that the harm to the decedent was foreseeable. See 2004-NMCA-135, ¶ 21, 103 P.3d at 587.

## ANALYSIS

The Court reaches the following conclusions: (i) it does not accept Michaud's argument that he should avoid restitution liability for Code 3's Tripp Lite device and Relevant Radio's Fostex speaker on the basis that APD's alleged negligence and Lyke's alleged theft, because, given the Court's finding that the items were not in the truck-bed when APD arrested Michaud because he had sold them to fund his drug addiction, the Court holds that APD's alleged negligence and Lyke's alleged theft are not factual causes of the items' loss, and so neither are they superseding proximate causes that could relieve Michaud of restitution liability; (ii) the Court holds, however, that Michaud should escape restitution liability for a reason that he did not raise, namely because the specific "conduct underlying [his] offense[s] of conviction," Hughey, 495 U.S. at 414 -- i.e., his 18 U.S.C. § 1030(a)(2), unauthorized-computer-access offense, and his 18 U.S.C. § 922(g)(3), addict-in-possession offense -- did not directly or proximately cause the losses to the victim's of his Sandia Crest theft, and accordingly no restitution should lie as to any of his victims, Code 3, Relevant Radio, City Link or Rocky Mountain. Neither offense -- the computer offense under MVRA, see 18 U.S.C. § 3663A(c)(1)(A)(ii) (mandating restitution for offenses against property),

and the possession offense under the VWPA, see 18 U.S.C. § 3663(a)(1)(A) (permitting restitution for any offense under Title 18) -- authorizes restitution.

As to the Court's latter holding, there is a tension in the Tenth Circuit's caselaw on the subject how to award restitution when a defendant pleads guilty to offenses that do not "involve[] as an element a scheme, conspiracy, or pattern," 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2), and that are removed from the conduct underlying his criminal liability, as are Michaud's non-scheme unauthorized-computer-access and addict-in-possession offenses from the underlying burglary he committed.  The tension in the Tenth Circuit's decisions mirrors disagreement -- at the level of a Court of Appeals split -- among the United States Courts of Appeals on the application of the Supreme Court's decision in Hughey, 495 U.S. 411, and the extent to which the losses for which MVRA restitution is ordered must flow from the elements of the defendant's offense of conviction.  The Court holds, that because the specific conduct underlying Michaud's offenses of conviction -- unlawful computer access and unlawful possession of ammunition by a controlled substances user -- did not cause any of his putative victims' harms, Michaud therefore is not liable to them under the MVRA or under the VWPA.  The Tenth Circuit's decision in Mendenhall anticipates squarely this result:

> We are not unmoved by the apparent injustice our decision creates for those victimized by crime. But at least since the Supreme Court decided Hughey almost thirty years ago, prosecutorial decisions to frame indictments with a "view to success at trial rather than to a victim's interest in full compensation" are made with a full understanding of the potential consequences. See 495 U.S. at 421, 110 S.Ct. 1979. There are tradeoffs in such decisions. Exacting a guilty plea to a lesser number of charged crimes than the possible maximum undoubtedly limits victims' recovery, but it also ensures restitution for those crimes to which the defendant pleads guilty.

Mendenhall, 945 F.3d at 1269.  Although the issue is not one that the parties raised, the Court is wary not to impose an illegal restitution order.  See Mendenhall, 945 F.3d at 1270 ("[I]mproper

restitution can . . . affect the fairness, integrity, and public reputation of judicial proceedings." (citing United States v. Gordon, 480 F.3d at 1212)).  Accordingly, the Court sustains Michaud's objections to the restitution order.

I.      **MICHAUD CANNOT ESCAPE MVRA RESTITUTION LIABILITY ON THE BASIS THAT EITHER APD OR LYKE ARE CAUSES OF MICHAUD'S VICTIMS' LOSSES THAT SEVERED THE PROXIMATE CAUSATION CHAIN, THEREBY RELIEVING MICHAUD OF LIABILITY, BECAUSE NEITHER APD NOR LYKE ARE FACTUAL CAUSES OF MICHAUD'S VICTIMS' LOSSES.**

The primary thrust of Michaud's objection to the Addendum is that APD's alleged negligence in its handling of the stolen items found in Michaud's truck, and Lyke's alleged theft of those items, constitute superseding causes that relieve Michaud of liability under the MVRA for the Fostex speaker and Tripp Lite device's losses.  These arguments do not succeed, because, as the Court finds in its Findings of Fact, these two items were not in Michaud's possession at the time APD apprehended him, see FOF ¶ 17, because prior to his arrest Michaud sold them to acquire drug money, see FOF 33, so any conduct by APD or Lyke subsequent to Michaud's arrest could not have been a factual cause of the devices' losses.  Instead, those items' losses were caused factually and proximately by Michaud's theft of the items and their sale to support Michaud's drug addiction.  See FOF ¶ 33.

The MVRA requires that, for offenses triggering the statute's applicability, to identify who is a "victim" to whom restitution can be ordered, the victim must be one who is "directly and proximately harmed" by the defendant's criminal conduct.  18 U.S.C. § 3663A(a)(2).  The statute therefore identifies victims based on two requirements: (i) the defendant "directly . . . harmed" the victim; and (ii) the defendant "proximately harmed" the victim.  18 U.S.C. § 3663A(a)(2).  Both these MVRA requirements draw on familiar direct and proximate causation doctrines; federal courts therefore have looked to the exposition of direct and proximate causation in the tort context

to inform their MVRA causation analyses.  See Paroline, 572 U.S. at 444-45 ("The concept of proximate causation is applicable in both criminal and tort law, and the analysis is parallel in many instances." (citing 1 W. LaFave, Substantive Criminal Law § 6.4(c), p. 471 (2d ed. 2003)).  An event's proximate cause must cause the event both factually and legally.  See Paroline, 572 U.S. at 444 ("[T]o say one event proximately caused another is a way of making two separate but related assertions. First, it means the former event caused the latter. . . . [Second, it] means that it was not just any cause, but one with a sufficient connection to the result.").  Direct cause, also known as cause-in-fact or factual cause, employs the but-for test for causation: whether, but-for the defendant's conduct, would the victim have suffered the harm she did.  See Restatement (Third) of Torts § 26 (Am. L. Inst. 2010)("Tortious conduct must be a factual cause of harm for liability to be imposed.  Conduct is a factual cause of harm when the harm would not have occurred absent the conduct.").  Cf. Bostock v. Clayton Cnty., Georgia, 140 S. Ct. 1731, 1739 (2020)("That form of causation is established whenever a particular outcome would not have happened 'but for' the purported cause. . . . In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 (2009)).  Proximate causation is a manner of limiting the potentially limitless liability arising from the expansive net cast by factual causation.  See Paroline, 572 U.S. at 445 ("A requirement of proximate cause thus serves, inter alia, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." (citing Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 838-839, (1996)).

Intervening and superseding causation works to limit the initial actor's liability.  An intervening cause is the conduct of a third party that contributes to the victim's harm, is a factual

cause of that harm, but one that does not relieve the initial tortfeasor of liability. See Johnstone v. City of Albuquerque, 2006-NMCA-119, ¶ 21, 140 N.M. 596, 603, 145 P.3d 76, 83 ("An intervening force is a superseding cause if the intervening force was not foreseeable at the time of the primary negligence." (quoting Sindler v. Litman, 166 Md. App. 90, 112, 887 A.2d 97, 109 (2005))). An intervening cause is a foreseeable consequence of the risks to which the initial tortfeasor exposed the victim, and so, the intervening causal actor does not break the chain of liability. See Trask v. Franco, 446 F.3d 1036, 1047 (10th Cir. 2006)("Foreseeable intervening forces are within the scope of the original risk, and . . . will not supersede the defendant's responsibility." (quoting William L. Prosser & Page Keeton, Prosser and Keeton on Torts § 44, at 303-04 (5th ed. 1984))).

A superseding cause is a third party's independent act or an independent event that breaks the initial tortfeasor's liability to the victim. See Morris v. Giant Four Corners, Inc., 294 F. Supp. 3d 1207, 1217 (D.N.M. 2018)(Herrera, J.)("An intervening force may interrupt the chain of causation, superseding the original negligence, and thus relieving the defendant of liability." (quoting Johnstone v. Albuquerque, 2006-NMCA-119, ¶ 21, 140 N.M. at 603, 145 P.3d at 83). These are causal forces interposed between the defendant's actions and the victim's harms that are so unforeseeable as to relieve the defendant of liability for the victim's harms. United States v. Zander, 794 F.3d at 1233 ("The crime of conviction will not be considered the proximate cause of the loss if there was an intervening cause, unless this intervening cause was 'directly related to the offense conduct.'" (quoting United States v. Speakman, 594 F.3d at 1172)). Typically, a third party's intentional or criminal acts constitute supervening causes. See United States v. Speakman, 594 F.3d at 1174 (stating that "[w]hen the intervening act is intentionally tortious or criminal, it is more likely to be considered independent," and "[t]he act of a third person in committing an

intentional tort or crime is a superseding cause of harm to another resulting therefrom. . . ." (quoting Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 620 (10th Cir. 1998), then Restatement (Second) of Torts § 448))). Notably, both intervening causes and superseding causes must be factual causes of the victim's harm.

Michaud does not express his position in these terms, but he in essence argues that either the APD or Lyke, or both, are superseding causes that relieve him of liability for the theft of the Fostex speaker and the Tripp Lite device. Cf. April 11 Tr. 7:18-8:5 ("That's the basis of the objection, is through the negligence of APD, and going against their own policies, that [Lyke] . . . has now got those two items."). Michaud owes his victims MVRA restitution so long as he "directly and proximately" harmed his victims. 18 U.S.C. 3663A(a)(2). Michaud's restitution objection thus centers on the proposition that APD and Lyke are to blame for misplacing the Fostex speaker and the Tripp Lite device, items which Michaud admits he stole, see April 11 Tr. 51:5-16 (Mendenhall, Michaud)("'You stole this Tripp Lite Smart Pro that we've been talking about; is that right?' 'That's correct.' 'And you also stole this Fostex speaker that we've been talking about?' 'That is correct.' 'You stole it from the Sandia Crest Communication site?' 'That is correct.' 'In November of 2020?' 'Correct.'"). Because of APD's misplacing the two items in Lyke's control, Lyke stole the items before the FBI could retrieve them, Michaud suggests. He thus asks the Court to hold that these actions must break the chain of causation and relieve him of liability. Cf. United States v. Zander, 794 F.3d at 1233 ("The crime of conviction will not be considered the proximate cause of the loss if there was an intervening cause, unless this intervening cause was 'directly related to the offense conduct.'" (quoting United States v. Speakman, 594 F.3d at 1172); Morris v. Giant Four Corners, Inc., 294 F. Supp. 3d at 1217 ("An intervening force may interrupt the chain of causation, superseding the original negligence, and thus relieving the

defendant of liability.").  His argument requires that two propositions be true: (i) either APD or Lyke, or both, is a factual cause of the two items' disappearance; and (ii) either APD or Lyke or both is a proximate cause of the two items' disappearance.  Michaud's argument fails on the first proposition, because -- given the Court's finding that Michaud sold to fund his drug addiction the two items, along with other stolen, unrecovered items -- neither APD nor Lyke is a but-for cause of the items' disappearance.

The Court, as it states in its Findings of Fact, finds that the missing items were not in Michaud's truck when APD arrested him, because Michaud sold the items to fund his drug addiction.  See FOF ¶¶ 17; 33.  Michaud's explanation why the items were in his truck, subject to APD's negligence and Lyke's theft, was that he was moving residences; the Court, however, does not credit this narrative because he did not have with him items that would be in the possession of a person moving residences and because FBI found items belonging to Michaud at his old residence; instead the Court finds that Michaud was not in the process of moving residences, so he did not have with him all his possessions in the truck upon his arrest, see FOF ¶ 16.  Because items were not with Michaud in the truck when APD arrested him, APD did not deposit the items in Lyke's care, see FOF ¶¶ 16-21, and Lyke did not steal them, see FOF ¶ 31.  The Court explains the Fostex speaker and Tripp Lite device's disappearance, instead, by finding that Michaud sold those items, along with the other stolen, unrecovered items, to fund his drug addiction.  See FOF ¶ 33.

Because, therefore, the items were already out of Michaud's possession upon his arrest, neither APD's nor Lyke's actions caused factually those items' losses.  Cf. Restatement (Third) of Torts § 26 (Am. L. Inst. 2010)("Tortious conduct must be a factual cause of harm for liability to be imposed. Conduct is a factual cause of harm when the harm would not have occurred absent

the conduct."). <u>Cf.</u> <u>Bostock v. Clayton Cnty., Georgia</u>, 140 S. Ct. at 1739 ("That form of causation

is established whenever a particular outcome would not have happened 'but for' the purported

cause. . . . In other words, a but-for test directs us to change one thing at a time and see if the

outcome changes. If it does, we have found a but-for cause." (citing <u>Gross v. FBL Fin. Servs., Inc.</u>,

557 U.S. 167, 175 (2009))).  Because they are not factual, but-for causes of the items' loss, neither

are they proximate causes that sever the chain of Michaud's liability to his victims for the losses

of the Fostex speaker and the Tripp Lite device.  For this reason, no causal force exists that could

break the chain of liability from Michaud's having "directly and proximately harmed" his victims.

18 U.S.C. 3663A(a)(2).  <u>Cf.</u> <u>United States v. Zander</u>, 794 F.3d at 1233 ("The crime of conviction

will not be considered the proximate cause of the loss if there was an intervening cause, unless this

intervening cause was 'directly related to the offense conduct.'" (quoting <u>United States v.</u>

<u>Speakman</u>, 594 F.3d 1165, 1172 (10th Cir. 2010))).  Therefore, Michaud cannot, for the reasons

he asserts in his oral objections to the Addendum, escape restitution liability under the MVRA to

his victims.[13]

---

[13]If the two items were present in Michaud's car such that APD or Lyke could be factual causes of the loss of the Fostex speaker and the Tripp Lite device, at least APD would not be a proximate cause of the items' loss.  As noted above, a proximate cause is "not just any cause, but one with a sufficient connection to the result."  <u>Paroline</u>, 572 U.S. at 444.  The foreseeable intervening act of a third party is an intervening cause that fails to break the chain of liability between the defendant and victim.  <u>See</u> <u>Trask v. Franco</u>, 446 F.3d 1036, 1047 (10th Cir. 2006)("Foreseeable intervening forces are within the scope of the original risk, and ... will not supercede the defendant's responsibility.")(quoting W. Page Keeton et al., <u>Prosser and Keeton on Torts</u> § 44, at 303–04 (5th ed. 1984)).  If APD is a factual cause because its actions causally contributed to the loss of the two items, then it is at most an intervening cause.  APD's actions were against department protocol, <u>cf.</u> Albuquerque Police Dep't, <u>2-73 Collection, Submission, and Disposition of Evidence and Property</u> 5, 14 (2022)(describing APD procedures for collection and disposition of items found at crime scenes), https://public.powerdms.com/COA/tree/documents/88 (last visited January 2, 2024).  Assuming that conduct amounts to negligence, it is not unforeseeable that some negligent conduct will arise in the course of a police investigation of a theft.  Michaud's rule would allow that any time a defendant's theft causes the loss of an item,

## II. MICHAUD'S OFFENSES OF CONVICTION -- HIS UNAUTHORIZED COMPUTER ACCESS AND AMMUNITION POSSESSION AS A NARCOTICS USER -- DID NOT PROXIMATELY CAUSE THE LOSS OF ITEMS THAT MICHAUD STOLE FROM THE SANDIA FACILITY.

Michaud is relieved from restitution liability, because the conduct underlying his offenses of conviction, specifically the conduct underlying his offenses of convictions' elements, did not proximately cause any of his theft victims' losses. Although the parties did not address the point, because unauthorized restitution "affect[s] the fairness, integrity, and public reputation of judicial proceedings," Mendenhall, 945 F.3d at 1270 (citing United States v. Gordon, 480 F.3d at 1212), the Court addresses the issue here in depth and finds it yields a result in Michaud's favor. The crux of the problem for restitution is that for offenses such as Michaud's, the Tenth Circuit requires that a restitution victim's harms flow from the offense of conviction's elements; that rule prohibits restitution in this case.

_____

then any negligence on the police's part in recovering the items lost would relieve the defendant of restitution liability for such actions. The Tenth Circuit has said that a restitution victim's own negligence does not sever the chain of liability. See United States v. Zander, 742 F. App'x 358, 364 (10th Cir. 2018)(holding that restitution due a victim is not lessened because of "how and when the [victim] approved moving forward" so long as the payments would not have been made but-for the wrongful conduct). Neither should the constable's negligent conduct during the investigation of the defendant's crime. Given the range of police activity involved in theft investigations, and the potential for actions that may negligent, Michaud's argument makes for too broad a rule.

It is true, however, that if Lyke's criminal conduct did cause the loss of the items, then that is an unforeseeable superseding cause that severs Michaud's liability. See United States v. Speakman, 594 F.3d 1165, 1174 (10th Cir. 2010)("When the intervening act is intentionally tortious or criminal, it is more likely to be considered independent," and "[t]he act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom. . . ." (quoting Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 620 (10th Cir.1998), then Restatement (Second) of Torts § 448)). The Court, however, found that Lyke did not steal the items after APD deposited them with him. See FOF ¶ 31. Instead, Michaud himself sold the Fostex speaker and Tripp Lite device, along with the other stolen, unrecovered items. See FOF ¶ 33.

Michaud's unauthorized-computer-access offense triggers mandatory MVRA restitution, see 18 U.S.C. § 3663A(c)(1)(A)(ii) (mandating restitution for offenses against property), while his addict-in-possession-offense permits discretionary VWPA restitution, see 18 U.S.C. § 3663(a)(1)(A) (permitting restitution for any offense under Title 18).[14]   Michaud's plea agreement did not contain a provision for restitution to non-"victim[s]" pursuant to 18 U.S.C. § 3663A(a)(3) or 18 U.S.C. § 3663(a)(3).  Compare Plea Agreement ¶ 4, at 2-3 (recognizing that potential penalties for Michaud's two offenses of conviction include "restitution as may be ordered by the Court"); id. ¶ 11, at 6 ("The United States and the Defendant recommend . . . a specific sentence of six months' imprisonment is [] appropriate. . . .   The remaining components of the Defendant's sentence, including . . . any . . . restitution . . . , shall be imposed by the Court after the presentation of evidence and/or argument."), with 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(3) ("The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.").  Whether restitution is authorized turns, therefore, on whether there exist any "victim[s]" of Michaud's offense of conviction -- "person[s] directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."  18 U.S.C. §§ 3663(a)(2), 3663A(a)(2).

---

[14]A different MVRA and VWPA provision that might appear relevant to the analysis, because it speaks to restitution under plea agreements, 18 U.S.C. §§ 3663A(c)(2), is not relevant under the present circumstances.  18 U.S.C. § 3663A(c)(2) states: "In the case of a plea agreement that does not result in a conviction for an offense described in paragraph (1), this section shall apply only if the plea specifically states that an offense listed under such paragraph gave rise to the plea agreement."  18 U.S.C. § 3663A(c)(2).  This provision allows for MVRA restitution when the plea agreement involves the defendant pleading to a non-MVRA triggering offense, i.e., when the defendant does not plead to an offense characterized in § 3663A(c)(1), such as "a crime of violence" or "an offense against property," 18 U.S.C. §§ (c)(1)(A)(i)-(ii).  Here, however, Michaud pled to one offense, the computer access offense, 18 U.S.C. § 1030(a)(2), which is an "an offense against property," 18 U.S.C. § 3663A(c)(1)(A)(ii), that triggers MVRA restitution.  Accordingly, this particularly provision of the MVRA is not important to the outcome here.

On first blush, the offenses to which Michaud pled guilty would not seem to have caused, proximately or otherwise, Code 3's, Relevant Radio's, City Link's or Rocky Mountain's harms. His offenses require he "intentionally accessed a computer . . . without or in excess of authorization[,] . . . obtained information[,] . . . and the computer was a protected computer," Plea Agreement ¶ 4, at 4, see 18 U.S.C. § 1030(a)(2)(C), and that he "knowingly possessed a firearm or ammunition[,] . . . was an unlawful user of any controlled substance[,] knew he was a drug user[,] and . . . the firearm or ammunition had moved," Plea Agreement ¶ 4, at 4. See 18 U.S.C. § 922(g)(3), in interstate or foreign commerce.  The Court notes at the outset its intuition, an intuition that reflects the import of Tenth Circuit caselaw on causation analysis for restitution cases: Michaud did not harm his victims by accessing a computer or by being a drug addict with a gun; he harmed them by stealing from them.  The United States itself suggests the statutes at its disposal are a poor fit for Michaud's underlying conduct.  See October 29 Tr. at 9:25-10:7 (Gerson)("We permit [sic] this case with recognition with the recognition of underlying offense of burglary of these radioed stations is a state law offense the way that we're able to reach this conduct is through Mr. Michaud's misuse of a piece of electronics that was stolen during that burglary.").

Neither offense is a scheme offense -- neither "involves as an element a scheme, conspiracy, or pattern of criminal activity," 18 U.S.C. §§ 3663A(a)(2), 3663(a)(2) -- so neither enjoys the broad causal web those offenses cast for purposes of restitutionary awards.  See 18 U.S.C. §§ 3663A(a)(2), 3663(a)(2) (providing "victim" of scheme-conspiracy-pattern offense is person harmed by the defendant's "criminal conduct in the course of the scheme, conspiracy, or pattern").  Because only for scheme offenses did Congress depart from the Hughey rule, see Reed, 80 F.3d at 1423 (stating that "the 1990 [VWPA] amendment was intended to overrule Hughey" only as to scheme offenses), the proximate causation analysis for Michaud's non-scheme offenses

is framed by the Hughey decision, holding that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order," Hughey, 495 U.S. at 420, and the Tenth Circuit's caselaw interpreting that rule.

The Tenth Circuit's caselaw exhibits tensions that reflect broader disagreement among the Courts of Appeals  -- a disagreement which the United States Court of Appeals for the Sixth Circuit identified and discussed at length in its recent opinion, United States v. Ruiz-Lopez, 53 F.4th 400, 405 (6th Cir. 2022)(Larsen, J.)("Ruiz-Lopez") -- about the requisite connection between a restitution victim's harms and the defendant's offense of conviction's elements.  Beside the United States Court of Appeals for the Eleventh Circuit, every federal appellate court holds that, as to non-scheme offenses, the MVRA and VWPA embody the Hughey rule.  Compare United States v. Washington, 434 F.3d 1265, 1269-70 (11th Cir. 2006)(Pryor, J.)("The error of [] reliance on Hughey . . . is that the statutory language [Hughey] interpreted . . . is materially different from the [MVRA]. . . . [Hughey's] standard . . . -- 'the loss caused by the specific conduct that is the basis of the offense of conviction' -- is irreconcilable with the [MVRA's] broad definition of 'victim.'" (quoting Hughey, 495 U.S. at 415; 18 U.S.C. § 3663A(a)(2))), with Penn, 969 F.3d at 459 ("[T]he definition of 'victim' in § 3663(a)(2) . . . more or less codifies the Hughey rule."); United States v. Cutter, 313 F.3d 1, 7 (1st Cir. 2002)(same result); United States v. Vilar, 729 F.3d 62, 97 (2d Cir. 2013)(same); United States v. Akande, 200 F.3d 136, 140–41 (3d Cir. 1999)(same); United States v. Davis, 714 F.3d 809, 815 (4th Cir. 2013)(same)("Davis"); Ruiz-Lopez, 53 F.4th at 405 (same); United States v. Donaby, 349 F.3d 1046, 1054 (7th Cir. 2003)("Donaby")(same); United States v. Reichow, 416 F.3d 802, 805 (8th Cir. 2005) ("Reichow")(same); Reed, 80 F.3d at 1423 (same);  Mendenhall, 945 F.3d at 1267 (same); United States v. Udo, 795 F.3d 24, 33 n.4

(D.C. Cir. 2015)(same).  Accordingly, the potential circuit split turns primarily upon the proper interpretation of Hughey.

The Tenth Circuit and other Courts of Appeals, have held that, for non-scheme offenses, the conduct underlying specifically the offense's elements must cause the victim's harms.  See Mendenhall, 945 F.3d at 1267 (rejecting restitution order where "[n]one of the[] elements [of the offense of conviction] caused the losses cited as the basis for the restitution order"); Davis, 714 F.3d at 814; Penn, 969 F.3d at 458; Reed, 80 F.3d at 1420; infra nn.18-20 and accompanying text (explaining at length these cases).  The United States Court of Appeals for the Sixth Circuit and three other Courts of Appeals all have held the opposite, namely that the causation analysis does not center on the offense of conviction's elements.  See Ruiz-Lopez, 53 F.4th at 405-06 ("We disagree with th[e] 'elements-only' approach.  No 'elements-only' language appears in Hughey.  And, importantly, no such language appears in the VWPA." (no citation given for quotation)).  See also Donaby, 349 F.3d at 1054-55; Reichow, 416 F.3d at 804-05; Washington, 434 F.3d at 1268-70; infra nn.21-24 (explaining at length these cases).

There is agreement that, compared with the causation analysis applicable in the non-scheme-offense context, the analysis applicable in the scheme-offense context is less restrictive. The distinction lies in the requirement that "the commission of [the] offense" cause a non-scheme-offense victim's harms, while "conduct in the course of the scheme" may cause a scheme-offense victim's harms.  18 U.S.C. §§ 3663(a)(2), 3663A(a)(2).  The latter formulation allows a wider berth in the connection between the defendant's actions, his offense of conviction, and the victim's harms; the Courts of Appeals agree on this point.[15]  Many criminal statutes under which courts

---

[15]Cf. United States v. Matos, 611 F.3d 31, 43 (1st Cir. 2010)("[T]he district court may order restitution without regard to whether the conduct that harmed the victim was conduct

order large restitutionary sums, e.g., fraud offenses, are scheme offenses.  See  18 U.S.C. § 1343

(requiring for mail and wire fraud that defendant "hav[e] devised . . . any scheme . . . to defraud");

18 U.S.C. § 1344 (requiring, for bank fraud, "a scheme or artifice . . . to defraud a financial

institution").  Accordingly, most fraud crimes will of necessity be scheme offenses and enjoy the

laxer approach to causation that attends MVRA restitution for scheme offenses.  The problems

discussed here that beset causation in federal restitution law are applicable particularly to such

garden variety crimes as, e.g., possession offenses, violent crime offenses, etc., although it can

also affect more sophisticated crimes that do not "involve[] as an element a scheme, conspiracy or

pattern or criminal activity."   18 U.S.C. §§ 3663(a)(2), 3663A(a)(2).   See, e.g., 18 U.S.C. §

1030(a) (unauthorized computer access and fraud); 18 U.S.C. § 1956(a) (money laundering); 18

U.S.C. § 666 (federal program bribery); 26 U.S.C. § 7201 (tax evasion).  Some non-scheme

offenses, like money-laundering and tax evasion, are charged often alongside conspiracy, so the

causation problems applicable to non-scheme offenses do not beset such analyses, because the

---

underlying the offense of conviction." (quoting United  States v. Acosta, 303 F.3d 78, 86-87 (1st
Cir. 2002)); United States v. Kinney, 610 F. App'x 49, 52 (2d Cir. 2015)("[A] defendant convicted
of an offense involving a criminal 'scheme' [is] liable for restitution to all persons harmed by his
actions pursuant to that scheme, even if those actions were not specifically described in the count
of conviction or even in the initial indictment." (citing United States v. Oladimeji, 463 F.3d 152,
158-59 (2d Cir. 2006))).
        Courts have said that this "criminal conduct" includes the following: the conduct of a
defendant's co-conspirators, see United States v. Gushlak, 728 F.3d 184, 195 n.7 (2d Cir.
2013)("We have in the past, exercising plain error review, affirmed a restitution award imposing
joint and several liability 'payable by all convicted co-conspirators in respect of damage suffered
by all victims of a conspiracy, regardless of the facts underlying counts of conviction in individual
prosecutions.'" (quoting United States v. Boyd, 222 F.3d 47, 50-51 (2d Cir. 2000) (per curiam));
and conduct engaged in in the conspiracy but outside the statute of limitations, see United States
v. Anieze-Smith, 923 F.3d 565, 574-75 (9th Cir. 2019)("[W]e agree with the Dickerson court
that . . . permitting restitution for losses incurred throughout the course of a fraudulent scheme,
even when those losses stem from acts that occurred outside the statute of limitations, does not run
afoul of Hughey." (discussing United States v. Dickerson, 370 F.3d 1330, 1338-39 (11th Cir.
2004))).

narrower causal analysis applicable to the non-scheme offense is subsumed under the less

restrictive analysis applicable to the scheme offense.  See, e.g. United States v. Rivernider, 828

F.3d 91 (2d Cir. 2016)(tax evasion and conspiracy).  Certain principles apply to the causation

analysis under both the scheme and non-scheme offense headings.[16]  Overall, however, analysis is

significantly looser for scheme offenses than for non-scheme offenses when it comes to the

requisite causal relationship between the victim's harms, the defendant's underlying wrongful

conduct, and the way the United States frames its criminal case.

A. **TWO CONFLICTING STRANDS EXIST IN THE TENTH CIRCUIT'S CASELAW -- ONE RESTRICTING RESTITUTION TO THE ELEMENTS OF THE OFFENSE, THE OTHER NOT RESTRICTING IT.**

The Tenth Circuit has sent mixed signals regarding the extent to which the losses for which

restitution is ordered must flow from the elements of a defendant's offense of conviction.  The

Tenth Circuit once has said that the losses for which a court can order MVRA restitution must be

---

[16]For example, it is significant for both scheme and non-scheme offenses how the United States drafts charging instruments and plea agreements, see United States v. Akande, 200 F.3d 136, 143 (3d Cir. 1999)("The government had the opportunity to amend the Information to include the November 1997 [conspiracy] incidents. . . . Because those events were not mentioned in the Information or during the plea colloquy, they may not be considered after the fact to be part of the defendant's offense of conviction [for MVRA purposes]."), with Mendenhall, 945 F.3d at 1268-69 ("[U]nlike Burns, where the information [for the defendant's non-scheme offense] was drafted broadly enough to capture the five disputed pieces of mail, here the indictment narrowly identifies only three firearms by serial number. . . . As we mentioned, the government can avoid restitution problems in the way it charges criminal conduct or reaches plea agreements." (citing United States v. Burns, 800 F.3d 1258, 1259-60 (10th Cir. 2015))).

Likewise, it is common with both scheme and non-scheme-offenses that courts look to such sources as the indictment, plea agreement, and plea allocution to determine what constitutes the "offense of conviction," 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2), for purposes of awarding restitution, see United States v. Lynch, 345 F. App'x 798, 803-04 (3d Cir. 2009)("Where, as here, the conviction is the result of a plea agreement, 'we look to the plea agreement and colloquy' to determine what is the 'offense of conviction.'" (quoting United States v. Akande, 200 F.3d at 142)); Mendenhall, 945 F.3d at 1266 (considering what conduct the defendant admitted to in his plea colloquy); Benally, 19 F.4th at 1259 (considering the facts admitted in the guilty plea).

losses that the defendant's conduct underlying the elements of his crime of conviction causes precisely, but it also has said that the losses need not themselves be elements of the offense.  The two cases that set up the tension in the Tenth Circuit's law are Mendenhall, 945 F.3d 1264, and Benally, 19 F.4th 1250.  The former case appears to require a stricter connection between the victim's losses and the offense elements than does the latter.

### 1.   The Tenth Circuit's Mendenhall Decision Focuses Causation Analysis on the Conduct Underlying the Defendant's Offense of Conviction's Elements.

In Mendenhall, the defendant broke into a gun shop and stole, among other items, sixty-two firearms, but he pled guilty to an indictment for knowing receipt of a stolen firearm in violation of  18 U.S.C. § 922(j), 924(a)(2); the "indictment states this violation occurred with respect to three firearms, each of which is identified by serial number therein," 945 F.3d at 1266.  Those three firearms were the only ones recovered.  See 945 F.3d at 1266.  "In the plea colloquy, he did not go further and accept guilt for the burglary or other related acts."  945 F.3d at 1266.  The district court ordered restitution to the gun shop not for the three guns named in the indictment but for "the loss of firearms not recovered, wages for employees to conduct inventory, loss of revenue for closing of business (historical average of Saturdays and Mondays), and cleanup/repairs."  945 F.3d at 1266.

The Tenth Circuit reversed the district court's order.  In reversing the order, the Tenth Circuit looked to Hughey, 495 U.S. 411, and its rule permitting district courts to order restitution "only for losses caused by the conduct underlying the offense of conviction."  Hughey, 495 U.S. at 416.  The Tenth Circuit noted that Hughey abrogated the Tenth Circuit's decision that had "permit[ed] restitution for losses associated with additional counts of an indictment for which a defendant had not been convicted because they 'had a significant connection to the act for which

conviction was had.'"  Mendenhall, 945 F.3d at 1267 (quoting United States v. Duncan, 870 F.2d

1532, 1537 (10th Cir. 1989).  The Tenth states that the Hughey "limitation dictates the result here,"

Mendenhall, 945 F.3d at 1267:

> Mendenhall pleaded guilty and was convicted for possessing, receiving, and concealing stolen firearms under  18 U.S.C. §§ 922(j) and 924(a)(2).  Such a conviction requires (1) knowing possession of a stolen firearm, (2) that moved or had been shipped in interstate commerce, and (3) knowing or having reasonable cause to believe it was stolen.  18 U.S.C. §§ 922(j) . . . None of these elements caused the losses cited as the basis for the restitution order: "the loss of firearms not recovered, wages for employees to conduct inventory, loss of revenue for closing of business (historical average of Saturdays and Mondays), and cleanup/repairs." R. Vol. III at 14.  The three firearms listed in the indictment were recovered and returned.  Accordingly, possessing them did not cause "the loss of firearms not recovered."  The remaining losses arise from the burglary of H&H, not from Mendenhall's possession, receipt, or concealment of the stolen firearms.
>
> The Fourth Circuit's decision in United States v. Davis is instructive. See 714 F.3d 809, 811 (4th Cir. 2013). In Davis, the defendant broke into a home and stole a handgun, ammunition, and several pieces of jewelry. Similar to Mendenhall here, the defendant pleaded guilty to only a single count of possessing a stolen firearm. Despite instructions in the PSR noting that restitution was inappropriate under the circumstances in light of Hughey, the district court in Davis awarded the homeowner $685 in restitution in part to cover damages resulting from the burglary. See id. at 812. The Fourth Circuit reversed. Citing Hughey, the court explained that although the defendant's "burglary and theft of the firearm represent necessary steps in the accomplishment" of the convicted offense, they were "legally irrelevant for the purpose of restitution." Id. at 814. Because the losses to the homeowner were not caused by the offense of conviction, namely the possession of a firearm with knowledge that it was stolen, those losses could not be the subject of restitution. See id. The same result is warranted here. Mendenhall's knowing possession of stolen firearms that were subsequently returned cannot reasonably be said to have caused the damage to H&H or its lost revenue.

Mendenhall, 945 F.3d at 1267-68.  Accordingly, Mendenhall offers a model whereby courts can

order MVRA restitution based only on the elements of the defendant's crime of conviction. The

Mendenhall court's emphasis on the elements of the defendant's offense and assertion that the

victim's loss had nothing to do with those elements, see 945 F.3d at 1268 ("None of these elements

caused the losses cited as the basis for the restitution order"), suggests that district courts look

primarily to the connection between the offense's elements and the victim's losses.   The

Mendenhall court expressed sympathy for the victims of Mendenhall's crime and noted that the

availability of restitution turns often on how the United States frames its indictments:

> We are not unmoved by the apparent injustice our decision creates for those
> victimized by crime. But at least since the Supreme Court decided Hughey almost
> thirty years ago, prosecutorial decisions to frame indictments with a "view to
> success at trial rather than to a victim's interest in full compensation" are made with
> a full understanding of the potential consequences.  See 495 U.S. at 421. . . .  There
> are tradeoffs in such decisions.  Exacting a guilty plea to a lesser number of charged
> crimes than the possible maximum undoubtedly limits victims' recovery, but it also
> ensures restitution for those crimes to which the defendant pleads guilty. . . .
> [Accordingly,] the government can avoid restitution problems in the way it charges
> criminal conduct or reaches plea agreements.

Mendenhall, 945 F.3d at 1269.

Demonstrative of this principle is a case Mendenhall cites, United States v. Burns, where

the defendant pled guilty on an information that "stated broadly that the defendant 'did knowingly

receive and unlawfully [possess] letters, packages, mail, and articles and things contained therein,

which had been taken and stolen from post office boxes at the Rock Springs Post Office, knowing

the same to have been unlawfully stolen and taken."  Mendenhall, 945 F.3d at 1268 n.2 (quoting

Information, United States v. Burns, 2:14-cr-00142-ABJ (D. Wyo. July 24, 2014)(Johnson, J.)).

The defendant in Burns was ordered to make restitution for forty-seven pieces of stolen mail, but

disputed five of those pieces; the Tenth Circuit rejected this contention on the ground that there

was sufficient basis to order the greater restitution, and Mendenhall, distinguishing the broader

allowance for restitution in Burns, states: "[T]he information [in Burns] was drafted broadly

enough to capture the five disputed pieces of mail, [whereas] here the indictment narrowly

identifies only three firearms by serial number," Mendenhall, 945 F.3d at 1268-69.  Later cases

follow along the same line.  See United States v. Dodson, 2022 WL 1409572, at *2 (permitting

MVRA recovery for loss from arson that occurred in the early hours of September 16, when relevant charging period in indictment "charged Mr. Dodson with setting the fire 'on or about September 15'" (quoting Record on Appeal, Vol. at 8)(emphasis in original)).  This Mendenhall principle thus focuses the analysis on the relationship between the elements of the offense of conviction and the victim's harms.

As the Sixth Circuit in Ruiz-Lopez discusses at length,[17] other federal appellate courts have spoken on this precise issue, and it is a near even split on how central to restitution causation

_____

[17] The Sixth Circuit in United States v. Ruiz-Lopez, 53 F.4th 400 (6th Cir. 2022)("Ruiz-Lopez"), held that the district court may award restitution to a victim whom the defendant shot accidentally in the leg; the defendant pled guilty only to being an undocumented alien in possession of a firearm:

> As Ruiz-Lopez sees it, the restitution order here exceeds [the] boundary [that Hughey sets] because he was convicted of mere unlawful possession of a firearm, but it was his reckless handling and resulting discharge of the gun that directly and proximately caused Hamid's injury.  Because the manner of possession is not an element of the alien-in-possession offense, he argues that Hamid was not a victim of his crime.

> We disagree. The plain language of the statute authorizes restitution to persons "directly and proximately harmed as a result of *the commission* of an offense," 18 U.S.C. § 3663(a)(2) (emphasis added). And, although the prosecutor was not required to prove recklessness to obtain a conviction, Ruiz-Lopez's particular act of possession -- his "commission of" the possession offense -- directly and proximately caused Hamid's harm. *See United States v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008) ("the word 'commission' reflects an intent to include the defendant's total conduct in committing the offense"). We are not the first court to conclude that the amended restitution statutes permit district courts to award restitution based on facts not strictly required to secure a conviction. See United States v. Washington, 434 F.3d 1265, 1268 (11th Cir. 2006); . . . United States v. Reichow, 416 F.3d 802, 804–05 (8th Cir. 2005); United States v. Donaby, 349 F.3d 1046, 1053 (7th Cir. 2003). . . .

> Ruiz-Lopez overreads Hughey by suggesting otherwise. . . . "Hughey required a causal link between the offense of conviction and the harm for which restitution is ordered." [United States v.] Washington, 434 F.3d at 1269. That link

analysis are the offense of conviction's elements when the conviction is for a non-scheme offense.

The Tenth Circuit's view, requiring that the harms flow from the offense's elements, is shared not

only by the Fourth Circuit,[18] upon which <u>Mendenhall</u> relies, but also by the United States Court of

---

is present here. Ruiz-Lopez's particular act of possession "directly and proximately" caused Hamid's harm.

Ruiz-Lopez points us to decisions from other circuits that have read <u>Hughey</u> more narrowly. In <u>United States v. Reed</u>, for example, the Ninth Circuit restated Hughey's holding this way: "restitution may only be imposed for conduct that constitutes an element of the offense." 80 F.3d 1419, 1423 (9th Cir. 1996) (emphasis added). Some other courts have followed suit. <u>See</u> <u>United States v. Penn</u>, 969 F.3d 450, 458 (5th Cir. 2020)[;] . . . <u>United States v. Davis</u>, 714 F.3d 809, 814 (4th Cir. 2013). . . . We disagree with this "elements-only" approach. No "elements-only" language appears in <u>Hughey</u>. And, importantly, no such language appears in the VWPA, which was amended after the <u>Hughey</u> decision to authorize restitution for any "victim" "directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663(a)(2).

<u>Ruiz-Lopez</u>, 53 F.4th at 405-406.

[18]As the quoted <u>Mendenhall</u> portion details, the defendant in the Fourth Circuit's <u>Davis</u> case burglarized a home, stealing, among other items, a firearm; he pled guilty only to possession of a stolen firearm, the elements of which are "(1) possession of a firearm that (2) has been transported in interstate commerce, and that (3) the defendant knew or had reasonable cause to believe was stolen." <u>Davis</u>, 714 F.3d at 814 (citing 18 U.S.C. § 922(j)). The Fourth Circuit denied restitution to the owner of the burglarized home, because "the specific conduct underlying the elements of the offense, 'and thus forming the basis for [the] offense of conviction, does not include the theft.' Rather, it includes only knowledge of a theft, and, '[a]s a result, the loss . . . was not caused by' possession of a stolen firearm, the sole 'offense of conviction.'" <u>Davis</u>, 714 F.3d at 814 (quoting <u>United States v. Blake</u>, 81 F.3d 498, 506-07 (4th Cir. 1996)). Accordingly, <u>Davis</u> concluded, "the homeowner cannot 'be considered a victim under § 3663,' and so is not entitled to restitution on that basis for the loss Davis caused him." <u>Davis</u>, 714 F.3d at 814 (quoting <u>United States v. Blake</u>, 81 F.3d at 507).

The Fourth Circuit has since reaffirmed the principle of <u>Davis</u>. <u>See</u> <u>United States v. Freeman</u>, 741 F.3d 426, 437 (4th Cir. 2014)(denying restitution for obstruction offense, because "we look to the elements of the offense of conviction and the 'specific conduct underlying these elements,'" and because "[a]ppellant's untruthfulness during [the obstructed] proceedings may have exacerbated the purported victims' harm, but it certainly did not cause it" (quoting <u>Davis</u>, 714 F.3d at 814)).

Appeals for the Fifth Circuit[19] and the United States Court of Appeals for the Ninth Circuit.[20]  On

the other side of the debate are, as noted, the Sixth Circuit,[21] as well as the United States Court of

---

[19]In Penn, 969 F.3d 450, the defendant was convicted at trial of escape from federal custody in violation of 18 U.S.C. §§ 751(a) and 4082(a), and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); underlying these convictions, Penn, a probationer, had fled a reentry program after he was involved in a shootout with rivals and took flight from police, a series of events during which he shot bullet holes into someone's car and crashed his car through a homeowner's fence.  See Penn, 969 F.3d at 453-54.  He was ordered to pay restitution to the owner of the car and the owner of the fence.  See Penn, 969 F.3d at 454.  The Fifth Circuit agreed with Penn that "the victims' losses were not caused by the conduct underlying his felon-in-possession conviction."  Penn, 969 F.3d at 458.

> The district court ordered restitution for losses suffered when someone -- it could have been Penn or [Penn's rival,] Robinson -- fired a bullet that struck a car during the shootout and when Penn crashed into a fence during the high-speed chase.  The specific conduct underlying the elements of the felon-in-possession offense does not include use of a firearm or flight from police.  As a result, neither the owner of the car nor the owner of the fence is a "victim" of Penn's conviction.

Penn, 969 F.3d at 458.

[20]In Reed, 80 F.3d 1419, the defendant involved the police in a high speed car chase that ended when he "crashed into several cars."  Reed, 80 F.3d at 1420.  He pled guilty only to being a felon in possession, and the district court ordered restitution to the car owners.  See Reed, 80 F.3d at 1420-21.  The Ninth Circuit rejected that order: "[A] judge may [not] order restitution under the [VWPA] . . . for conduct that is not an element of the offense."  Reed, 80 F.3d at 1420.  See id. at 1422 n.5 ("Unlike the instant case, the acts that caused the mother's loss of income (lying to the FBI and a grand jury) indeed were elements of the convicted offenses." (discussing United States v. Haggard, 41 F.3d 1320, 1323-24 (9th Cir. 1994))).

[21] See Ruiz-Lopez, 53 F.4th at 405-06 ("We disagree with th[e] 'elements-only' approach. No 'elements-only' language appears in Hughey. And, importantly, no such language appears in the VWPA." (no citation given for quotation)).

Appeals for the Seventh Circuit,[22] the United States Court of Appeals for the Eighth Circuit,[23] and

the Eleventh Circuit.[24]   These cases emphasize in the statutes' "victim" definition -- "a person

---

[22]In Donaby, 349 F.3d 1046, the Seventh Circuit held that an MVRA victim's harms need not flow from an element of the defendant's offense of conviction because "[t]he text of the VWPA, the MVRA, and the Hughey opinion . . . do not limit restitution to the elements of the offense." Donaby, 349 F.3d at 1054. The defendant in Donaby robbed a bank and led police on a chase, during which police vehicles were damaged; the Seventh Circuit affirmed the district court's restitution order to the police department, stating that, "while fleeing the bank is not an element of bank robbery, the damage to Shiloh was a direct and proximate consequence of the specific conduct involved in robbing the bank." Donaby, 349 F.3d at 1054.

[23]As in the Seventh Circuit's Donaby, the Eighth Circuit's Reichow defendant robbed a bank, damaging police vehicles in the ensuing flight and causing psychological harm to bank employees present during the robbery. Reichow affirmed restitution to the police, because "the bank robbery directly and proximately caused the damage to the police vehicle during the getaway," and "[t]he damage Reichow caused to the deputies' squad cars and deputy Golbuff's injury occurred 'during' the robbery." Reichow, 416 F.3d at 805. Reichow also did not deny that bank employees harmed psychologically could be MVRA victims, but overturned their restitution because they were not hurt physically or pecuniarily. See Reichow, 416 F.3d at 805-06.
    In the Court's reading of Reichow, it is possible that, although seemingly a non-elemental approach case, Reichow engages in the elemental analysis approach. On its face, Reichow engages in a non-elements inquiry. Ruiz-Lopez cites it as an example of a case that rejects the elemental approach. See Ruiz-Lopez, 53 F.4th at 405. Moreover, Reichow relies on the Seventh Circuit's decision in Donaby, see Reichow, 416 F.3d at 805, which states that "[t]he text of the VWPA, the MVRA, and the Hughey opinion, however, do not limit restitution to the elements of the offense," Donaby, 349 F.3d at 1054.
    Some language in Reichow, however, suggests its analysis focuses on the offense's elements. The statute under which Reichow was convicted requires that he use a firearm during a crime of violence; the Eighth Circuit emphasized that "the escape phase of a crime is part of the robbery and occurs 'during' it." Reichow, 416 F.3d at 805. The Eighth Circuit then string cites a number of cases holding that escape is part of a robbery. See Reichow, 416 F.3d at 805. Accordingly, it held that the use of a firearm during the escape satisfies the § 924(c) "during" requirement, such that "[t]he damage Reichow caused to the deputies' squad cars and deputy Golbuff's injury occurred 'during' the robbery." Reichow, 416 F.3d at 805.
    The Court highlights this language to emphasize that central to the Eighth Circuit's holding is the proposition that an element of Reichow's offense of conviction, the firearm use "during" the offense, was satisfied and that the alleged victim's harms flowed therefrom. This result suggests that the Eighth Circuit implicitly used the elemental approach. If the Eighth Circuit had held that the damage had not occurred "during" the offense, such that the harm did not flow from an element of the offense, Reichow may not have affirmed the restitution order.

directly and proximately harmed as a result of the commission of an offense," 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2) -- the language "result of" and "commission of," to say that the harms need not flow from the elements themselves, but from the defendant's conduct conceptualized more broadly.  See Ruiz-Lopez, 53 F.4th at 405 ("[T]he word 'commission' reflects an intent to include the defendant's total conduct in committing the offense" (quoting United States v. Chalupnik, 514 F.3d 748, 753 (8th Cir. 2008))).  Ruiz-Lopez outlines at length this disagreement, but it did not identify every Court of Appeals that has spoken on the subject; it neglected to mention Mendenhall, where, as discussed, the Tenth Circuit weighs in on the side of the elements-restrictive approach.  Moreover, the United States Court of Appeals for the First Circuit[25] and the United

---

[24]The Eleventh Circuit in Washington, 434 F.3d 1265, allows restitution to a police department and building cooperative after a police car and building structure were damaged during the defendant's flight from a bank robbery.  See Washington, 434 F.3d at 1266-67.  Washington permits restitution, because, "[a]lthough flight is not an element of bank robbery, its harm may directly and proximately result from the robbery."  Washington, 434 F.3d at 1268.

As discussed above, however, Washington bases its holding in part on rejecting Hughey as guiding the outcome: "The standard for causation defined in Hughey -- 'the loss caused by the specific conduct that is the basis of the offense of conviction' -- is irreconcilable with the broad definition of "victim" in the [MVRA]."  Washington, 434 F.3d at 1269 (quoting Hughey, 495 U.S. at 414)(emphasis added).  Washington thus reaches the same result as do Ruiz-Lopez, Donaby, and Reichow, but does so on a significantly different basis.  Those cases all rely on Hughey, see Ruiz-Lopez, 53 F.4th at 405; Donaby, 349 F.3d at 1054; Reichow, 416 F.3d at 805, and they purport to represent the correct interpretation of Hughey's rule.  Washington, on the other hand, disavows that constraint altogether, a position as to which the Eleventh Circuit finds itself alone. See supra p. 40.

[25]The First Circuit suggests an inclination toward the Tenth Circuit and others' elements-first approach.  In a case involving a money laundering conviction, it reversed a restitution order to a bankruptcy trustee, because while the trustee might have been a victim of the bankruptcy fraud connected to the laundering offense, the laundering itself did not harm her:

> While the trustee may be a victim of bankruptcy fraud, that was not the charge against Paradis. His offense was laundering the proceeds of the fraud. There is no evidence that the trustee was harmed as a result of this offense. Its effect was to conceal the proceeds of the fraud and to divert those funds from the estate where they could have been available to pay creditors who had filed claims. But again

---

States Court of Appeals for the Second Circuit,[26] although they do not use the precise terms of

looking to the elements or not, have issued opinions that suggest their inclination to one or the

---

there is no evidence of harm to creditors, i.e., no evidence of creditors who filed claims that went unpaid. Because there is no evidence of identifiable victims who suffered harm as a result of Paradis's money laundering, the restitution order must be vacated.

United States v. Paradis, 219 F.3d 22, 24-25 (1st Cir. 2000)("Paradis").  This analysis suggests the First Circuit attends to the elements of Paradis' laundering offense much like the Fifth Circuit and the Ninth circuit attend to the elements of the felon-in-possession offenses, and the Fourth Circuit to the elements of the possession of stolen firearms offense.  The First Circuit in Paradis might have held that restitution was appropriate for the laundering offense, because of harms associated with the underlying bankruptcy fraud that represented a necessary step towards the defendant's laundering offense.  In rejecting that outcome, the First Circuit reaches an outcome similar to that that the Fourth Circuit reached in Davis: "Davis's burglary and theft of the firearm represent 'necessary step[s] in the accomplishment of his objective,' here, possession of a stolen firearm. . . . But . . . 'the factual connection between' these 'necessary step[s]' and Davis's offense of conviction 'is legally irrelevant for the purpose of restitution.'"  Davis, 714 F.3d at 814 (quoting United States v. Blake, 81 F.3d 498, 506 (4th Cir. 1996))(alterations in Davis, but not in United States v. Blake).
      Moreover, one district court in the First Circuit, relying in part on Fourth Circuit caselaw, invoked explicitly the elemental approach.  See United States v. Thuna, 382 F. Supp. 3d 166, 171-73 (D.P.R. 2019)("Because Lilly's alleged harm is not "directly" caused by any element of Thuna's offense, Lilly is not a victim of Thuna's crime. . . . The sale of Lilly's misbranded drugs to buyers who would have otherwise allegedly bought the same products from Lilly is not an element of Thuna's offense. . . ." (citing United States v. Janosko, 642 F.3d 40, 42 (1st Cir. 2011); United States v. Freeman, 741 F.3d at 438)).

[26]The Second Circuit's pertinent cases suggest different results.  In United States v. Varrone, 554 F.3d 327, 333-35 (2d Cir. 2009)(Sotomayor, J.)("Varrone"), the court rejected restitution imposed as a condition of supervised release, which the court held was subject to the same Hughey constraints as restitution pursuant to the VWPA and MVRA.  The defendant's underlying conduct involved defrauding people, but he was convicted of only failure to file Currency Transaction Reports ("CTRs") in violation of 31 U.S.C. §§ 5313, 5322(a), a non-scheme offense.  Although it did not explicitly look to the elements of the offense, the court rejected restitution because "[the victim] Bruss's loss was directly caused by a fraudulent scheme, and not by [the defendant] Castello's failure to file CTRs. Accordingly, Castello's offense conduct lacks the causal nexus to Bruss's loss required under Hughey, and the restitution order is not authorized." Varrone, 554 F.3d at 334.
      United States v. Razzouk, 976 F.3d 250, 255 (2d Cir. 2020)("Razzouk"), however, suggests a different tack.  Interpreting a different section of the MVRA, namely, what offenses are MVRA-triggering "offense[s] against property," 18 U.S.C. § 3663A(c)(1), the Second Circuit states there that "a statute's use of the word 'committed' suggests a focus on the manner of commission and

other side.  The United States Court of Appeals for the District of Columbia, moreover, has, in

deciding restitution cases, cited several cases from the Fourth and Fifth Circuit, which use the

elements-first approach;[27] only the United States Court of Appeals for the Third Circuit appears

not to have spoken to this issue.  The rule that applies in such circumstances as Michaud's is,

therefore, not uniform nationwide.

### 2. The Tenth Circuit's Benally Decision Instructs that a Victim's Harms Need Not Be Elements of the Offense of Conviction.

Within the Tenth Circuit's caselaw specifically, a different principle, in tension with the

one Mendenhall represents, appears in Benally.  Benally involves a car crash in Indian Country;

the defendant, a drunk driver, pled guilty to involuntary manslaughter after she crashed headlong

into an oncoming car, seriously injuring its driver, and killing the passenger in her own car.  See

19 F.4th 1253-54.  The conviction was based on the passenger's death -- the death of another

person is an element of the defendant's offense.  See 18 U.S.C. § 1112(a) ("Manslaughter is the

unlawful killing of a human being without malice.").  The United States initially also had charged

---

stands in contrast to a reference to a conviction for a 'generic' crime, which requires instead a
focus on the crime's elements."  Razzouk, 976 F.3d at 255 (quoting Taylor v. United States, 495
U.S. 575, 599-600 (1990)).  This statement echoes the Sixth Circuit's discussion in Ruiz-Lopez,
which noted that "Ruiz-Lopez's particular act of possession -- his 'commission of' the possession
offense -- directly and proximately caused Hamid's harm."  Ruiz-Lopez, 53 F.4th at 405.  See id.
(citing United States v. Chalupnik, 514 F.3d 748, 753 (8th Cir. 2008)("[T]he word 'commission'
reflects an intent to include the defendant's total conduct in committing the offense.")).  If the
Second Circuit were to revisit the issue, where Varrone suggests one result and Razzouk suggests
another result, the Second Circuit may hold with Ruiz-Lopez that the offense's elements are not
the causation analysis's focal point.

[27]The D.C. Circuit has not spoken explicitly to the subject, but it has cited with approval
cases such as Davis, Freedman, and United States v. Austin, 479 F.3d 363 (5th Cir. 2007), all of
which have taken the elements-first approach.  See United States v. Udo, 795 F.3d 24, 33-34 & 34
n.6 (D.C. Cir. 2015).

Benally with assault resulting in serious bodily injury arising out of the other driver's injuries, but it dropped that charge when she pled guilty to the manslaughter charge.  See 19 F.4th at 1253.  The factual resume to which Benally pled guilty, therefore, referenced the passenger's death, but said nothing of the other driver's injuries.  See 19 F.4th at 1254.  The other driver sought MVRA restitution for his own injuries, to which Benally argued he was not entitled, because he was not a victim of the offense of conviction: "[C]iting the elements of involuntary manslaughter, [she argued] that '[t]he loss associated with an involuntary manslaughter charge relates to a specific harm (death) of a specific person.'"  19 F.4th at 1259 (quoting defendant's appellate brief).  The Tenth Circuit rejected this argument:

> Her position . . . finds no support in the language of either the MVRA or the VWPA.  Both statutes define the term "victim" to "mean[ ] a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." . . . Nothing in this statutory language limits such "harm" to injuries or death that are essential elements of the offense of conviction.  To the contrary, the Supreme Court has held "that the language and structure" of these acts demonstrated Congress' intent to authorize restitution "for the loss caused by the specific conduct that is the basis of the offense of conviction." Hughey v. United States, 495 U.S. 411, 413, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (addressing VWPA); see United States v. Mendenhall, 945 F.3d 1264 (10th Cir. 2019) (applying same rationale to MVRA).  Consistent with that interpretation, we have, for example, held that a manslaughter victim's sons were "directly and proximately harmed as a result of their father's death because they . . . lost, among other things, a source of financial support." United States v. Checora, 175 F.3d 782, 795 (10th Cir. 1999) (applying VWPA).

> Here, Benally admitted in her written plea agreement that she engaged in the following conduct that gave rise to the offense of conviction:

>> . . . On March 5, 2019, I was driving on Interstate 40 . . . . L.C. who is an enrolled member of the Navajo National Tribe was in the passenger seat of the vehicle.  While driving, I crashed my car into another vehicle.  As a result of the crash L.C. was killed.  I learned later that . . . my blood alcohol level was measured .226, within two hours of the crash, and that I had been driving at a speed of approximately 90 mph on Interstate 40 where the posted speed limit is 75 mph.

> . . . Although Benally argues that the loss from this conduct is confined to the death
> of L.C., we reject that argument.  Benally's act of crashing her car head-on into [the
> other driver] J.G.'s car was a singular act that caused both L.C.'s death and the
> losses that were suffered by J.G., specifically the physical injuries he suffered that
> necessitated medical care, as well as the damage to his vehicle.  In other words,
> Benally's act of crashing her car head-on into J.G.'s car cannot reasonably be
> divided into any sub-parts that would have allowed the district court to classify L.C.
> as the only victim of the offense of conviction.

Benally, 19 F.4th at 1259.  The Tenth Circuit dismisses the notion that the losses for which MVRA

restitution is sought must be an element of the defendant's offense of conviction.  See 19 F.4th at

1259 ("Nothing in [the] statutory language limits such 'harm' to injuries or death that are essential

elements of the offense of conviction.").

    The tension is that the Tenth Circuit, in Benally, instructs that a court's analysis look not

to the elements of the defendant's offense of conviction, while in Mendenhall, the Tenth instructs

that courts look to the offense's elements.  In reversing the district court's restitution order,

Mendenhall emphasized that "[n]one of [the] elements" of the defendant's stolen-firearms-

possession offense "caused the losses cited as the basis for the restitution order," noting that the

losses to the burglarized gun shop "arise from the burglary of H&H, not from Mendenhall's

possession, receipt, or concealment of the stolen firearms."  Mendenhall, 945 F.3d at 1268.

Unhelpfully, Benally cites Mendenhall without comment on this tension.  Unlike the proposition

Mendenhall stands for, other Courts of Appeals have not weighed directly in on the issue that

Benally addressed -- namely the issue of the "divi[sibility]" of the offense conduct from the

conduct causing the victim's harm, Benally, 19 F.4th at 1259 -- so the Court can draw no guidance

thence.[28]  Despite the tension, resolution is possible of these two strands in the Tenth Circuit's

causation analysis for recompensing harms that non-scheme offenses cause.

> B.   THE TENTH CIRCUIT'S DECISIONS IN BENALLY AND MENDENHALL CAN BE RECONCILED BY PERMITTING RESTITUTION FOR HARMS THAT FLOW FROM CONDUCT NOT REQUIRED BY AN OFFENSE OF CONVICTION'S ELEMENTS, IF SUCH CONDUCT IS COINCIDENT TO CONDUCT SATISFYING THE OFFENSE OF CONVICTION'S ELEMENTS.

Close examination of the Tenth Circuit's cases of Mendenhall and Benally suggests a

resolution to their apparent tension.[29]  Where Mendenhall restricts restitution causation analysis to

harms that the defendant's offense of conviction's elements cause, Benally declines to bind that

analysis to only harms that the offense statute anticipates.  The Court offers the following as the

best understanding of the rule that these cases produce: in the Tenth Circuit, restitution may be

ordered for harms that features of the defendant's conduct extraneous to the offense's elements

---

[28]Some circuits' caselaw suggests a similar resolution of the issue, however.  See United States v. Yijun Zhou, 838 F.3d 1007, 1013 (9th Cir. 2016)(permitting MVRA restitution to more victims than the one mentioned at the plea colloquy because the "Defendant did not plead guilty only to the Nordstrom allegations -- he pleaded guilty to Count One of the indictment," and because "Congress likely intended restitution to all victims within the scope of an admitted crime, even if the parties focused primarily on one set of victims at the plea colloquy"); United States v. Bailey, 974 F.2d 1028, 1033-34 (4th Cir. 1992)(rejecting the proposition that restitution was proper only with respect to investors specifically named in the indictment where the "offense was broadly defined in the indictment").

[29]As discussed further below, see infra n.30, resolving the tension between Mendenhall and Benally also suggests a path toward blunting the disagreement that exists between Mendenhall and Ruiz-Lopez.  Close analysis reveals that the Tenth Circuit in Benally, when combined with Mendenhall, and the Sixth Circuit in Ruiz-Lopez, reach much the same conclusion.  Although articulated in different language, the Tenth Circuit's position in Benally and the Sixth Circuit's decision in Ruiz-Lopez reach a similar conclusion: both cases allow an MVRA victim's harms to flow from features of a defendant's conduct that the defendant's offense of conviction's elements do not require strictly, so long as those superfluous features occur concomitantly with the features that the defendant's offense of conviction's elements require.

cause that manifest concomitantly with those features of the defendant's conduct that satisfy the offense's elements.

1.     **It is Possible to Reconcile the Tenth Circuit's Seemingly Contradictory Rules in Mendenhall and Benally on a Theoretical Level.**

On its own terms, Benally addresses Benally's argument that, where a statute triggering MVRA restitution necessitates, according to its elements, the existence of a particular victim, then only that victim referenced in the statute can be an MVRA victim.  See Benally, 19 F.4th at 1259 ("[Benally] argues, citing the elements of involuntary manslaughter, that '[t]he loss associated with an involuntary manslaughter charge relates to a specific harm (death) of a specific person.'" (quoting record on appeal)).  The procedural history there suggested such a line of attack: the United States dropped its assault resulting in serious bodily injury charge, 18 U.S.C. §1153, 113(a)(6), so Benally gamely asserted that the only compensable injuries were those of the victim that the crime of which she was committed anticipated explicitly, namely the homicide victim. See Benally, 19 F.4th at 1255.

Benally, therefore, answers explicitly the question whether there can be more than one MVRA victim when the statutory offense happens to anticipate a discrete victim, here, the "human being" whom Benally "unlawful[ly] kill[ed]."  18 U.S.C. § 1112(a).  The Tenth Circuit answers that district courts need not choose only one MVRA victim and need not divide an event's victim-harming features when the same event harms multiple asserted MVRA victims.  Cf. Benally, 19 F.4th at 1259 ("Benally's act . . . cannot reasonably be divided into any sub-parts that would have allowed the district court to classify L.C. as the only victim of the offense of conviction.").  A contrary rule would, for example, bar restitution when the offense's elements do not explicitly make reference to a person on the receiving end of the defendant's criminal conduct: no statutory

victim, no restitution.  Benally rejects that result.  Where the conduct satisfying the statute's elements created undoubtedly one MVRA victim -- i.e., the homicide victim, Benally's passenger, is clearly a "person directly and proximately harmed by the commission of [homicide,] the offense of conviction," 18 U.S.C. § 3663A(a)(2) -- the same conduct created also another MVRA victim.  See Benally, 19 F.4th at 1259 ("Benally's act of crashing her car head-on into J.G.'s car cannot reasonably be divided into any sub-parts that would have allowed the district court to classify L.C. as the only victim of the offense of conviction.").

When considered in conjunction with Mendenhall, however, Benally should be understood to establish another proposition.  This proposition provides that district courts need not "divide," Benally, 19 F.4th at 1259, the features of a defendant's conduct that satisfy an offense's elements, cf. 18 U.S.C. § 1112(a) (defining involuntary manslaughter as the "unlawful killing . . . a human being without malice . . . in the commission[,] . . . without due caution and circumspection, of a lawful act which might produce death"), from features of the defendant's conduct that occur concomitantly and that harm an alleged MVRA victim.  The defendant's actions in crashing into another car and killing her passenger, actions that come within the manslaughter statute -- i.e., "unlawful[ly] killing . . . a human being without malice . . . in the commission[,] . . . without due caution and circumspection, of a lawful act which might produce death," 18 U.S.C. § 1112(a) -- cannot be "divided," Benally, 19 F.th at 1259, from the actions that caused the victim's harms.  The action is identical which satisfied the statute and which harmed her victims; accordingly the district court need not decline to grant restitution on the basis of those facts about the defendant's conduct that are not required by the offense of conviction's elements, so long as those facts occur concomitantly with those facts about the defendant's conduct that the offense of conviction's elements require.

Recognizing this proposition is key to reconciling Benally with Mendenhall.  The former case permits MVRA restitution without analytical attention to the elements of the defendant's offense, while the latter case binds MVRA restitution to the elements of a defendant's offense of conviction.  Compare Benally, 19 F.4th at 1259 ("Nothing in [the MVRA's] statutory language limits such 'harm' to injuries or death that are essential elements of the offense of conviction."), with Mendenhall, 945 F.3d at 1268 (rejecting restitution order based on knowing possession of a stolen firearm, because "none of [the offense's] elements caused the losses cited as the basis for the restitution order").  The conduct here which harmed L.C. was that conduct which satisfied the elements of the offense, see 18 U.S.C. § 1112(a), so to say that the conduct harming L.C. "cannot reasonably be divided" from the conduct which harmed J.G. and to say that they are "a singular act," Benally, 19 F.4th at 1259, is to permit MVRA restitution for harms flowing from facts about Benally's conduct that the offense of conviction's elements do not strictly require, but that occur concomitantly with the features of her conduct that her offense of conviction's elements require. There is, for example, no suggestion in Benally that restitution was proper to the other driver only because the passenger was "unlawfully kill[ed]," 18 U.S.C. § 1112(a); i.e., the propriety of the restitution award rests not on the notion that "th[is] element[] caused," Mendenhall, 945 F.3d at 1268, the other driver victim's harms.  Accordingly, Benally's indivisibility principle is that restitution is proper when the conduct which satisfies the elements of the defendant's offense of conviction "cannot reasonably be divided" from the conduct that harms the alleged MVRA victim, even if it is not the element-satisfying facts that cause the victim's harms.  Benally, 19 F.4th at 1259.

Reconciliation like this is not only possible, but necessary.  If restitution cannot be ordered for harms caused by factual features occurring simultaneously to those element-satisfying features

of a defendant's conduct that bring it within the offense of conviction -- i.e., those facts about a defendant's conduct that identify it as "underlying the offense of conviction," Hughey, 495 U.S. at 416 -- then whole swaths of offenses for which Congress has empowered courts to make restitution would never satisfy that congressional mandate.  An absolutist interpretation of the elements-only causation question would require that nothing besides the elements of a defendant's offense of conviction cause a victim's harm, and that each of the elements contribute causally to the victim's harm; this one is not an unavailable reading of some of the stronger language in the elements-forward opinions.  Cf. Mendenhall, 945 F.3d at 1268 (rejecting restitution order, because "[n]one of these elements caused the losses cited as the basis for the restitution order"); Reed, 80 F.3d at 1420, 1422 n.5 (holding that a restitution cannot issue for "conduct that is not an element of the offense of conviction," and noting that it approved restitution order where "the acts that caused the mother's loss of income (lying to the FBI and a grand jury) indeed were elements of the convicted offenses" (discussing United States v. Haggard, 41 F.3d 1320, 1323-24 (9th Cir. 1994)).  These cases suggest that possibly all of the offense's elements must have some causal relationship to the victim's harms; if it is not all, but only some elements that must have this relationship, it is not clear which ones.

If this absolutist approach is taken, then it is hard to imagine what harms flow from only a defendant's commission of the elements of possession crimes.  This issue affects primarily VWPA restitution, which permits courts to order restitution for "an[y] offense under [Title 18]," 18 U.S.C. § 3663(a)(1)(A), than it does the MVRA which includes, e.g., "crime[s] of violence . . . [and] offense[s] against property," 18 U.S.C. § 3663A(c)(1)(A)(i)-(ii).  It is unclear, for example, what harms could flow from only the conduct beneath the elements of the knowing possession of a stolen firearm statute seen in Mendenhall: "It shall be unlawful for any person to . . . possess . . .

any stolen firearm . . . which has been . . . transported in[] interstate . . . commerce . . . knowing . . . that the firearm . . . was stolen."  18 U.S.C. § 922(j).  Under few circumstances, could a defendant actually harm a victim by the conduct underlying the offense -- i.e., by merely having in his possession a firearm he knows was stolen.

Moreover, under an absolutist approach to the elements-only approach, it is unclear how to address the causal connection between the mens rea element of an offense and the victim's harms.  If the victim's harm must be caused only by what the offense's elements require, then no harm could flow from, for example, the defendant's requisite "know[ledge]," 18 U.S.C. § 922(j), of a gun's stolen character.  A court may have to say that a victim was not harmed by the defendant's act, because the harm did not flow from the defendant's "know[ledge]," 18 U.S.C. § 922(j), i.e., if the victim suffers harm regardless whether the defendant knew or did not know the gun was stolen.  On this extreme view, because the causal link between the offense's mens rea element and the victim's harm fails, no restitution is appropriate.  The same problem attends the mens rea components of all criminal statutes: it is unclear how the mens rea component of a defendant's offense conduct contributes to the victim's harm.  If the absolutist view requires the causal contribution of each element of the defendant's statute-satisfying conduct, then this rule would affect both the VWPA and MVRA.  This would make impossible criminal restitution, and Congress has mandated that it at least be possible, if not mandatory, that such restitution be ordered.  See 18 U.S.C. § 3663(a)(1)(A) ("The court, when sentencing a defendant convicted of an offense under [Title 18] . . . may order . . . that the defendant make restitution to any victim of such offense. . . ."); 18 U.S.C. § 3663A(1)(1) ("[W]hen sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense. . . .").

The Court does not suggest that the Tenth Circuit holds this view.  Indeed, the result in Benally suggests that it does not.  Again, the elements of Benally's homicide offense involved the "the unlawful killing of a human being."  See 18 U.S.C. § 1112(a).  There is no suggestion in Benally however, that it is because the victim died that the injured other driver was a proper MVRA victim.  There is no suggestion that such a causal relationship must exist between that element and the victim's harm.  The injured other driver would have been just as injured by Benally's wrongful conduct had Benally's passenger lived instead of died.  Benally does not suggest that this, therefore, contingent causal relationship between the victim's harms and this central element of the defendant's offense -- that another "a human being [was] . . . unlawfully kill[ed]," 18 U.S.C. § 1112(a) -- at all frustrates the restitution analysis.  The Benally case suggests thus how the Tenth Circuit takes a realistic, not absolutist view, of the elements-harms relationship.

The preceding discussion, moreover, cautions against taking too far the approach to restitution causation analysis that looks to the elements of the defendant's offense of conviction to determine what, per Hughey, is the "conduct underlying the offense of conviction."  Hughey, 495 U.S. at 416.  The problems that the absolutist approach engenders is much like the problems that attend similar, elements-focused analyses in other areas of the law: for example, the much-criticized categorical approach used in cases deciding Armed Career Criminal Act issues.  Cf. Rachel E. Barkow, Categorical Mistakes: The Flawed Framework of the Armed Career Criminal Act and Mandatory Minimum Sentencing, 133 Harv. L. Rev. 200, 206 (2019)("[J]urists and commentators have criticized the Supreme Court's approach for both being 'extremely complicated' and producing inconsistent results that vary based on the . . . statute at issue." (quoting Rebecca Sharpless, Finally, a True Elements Test: Mathis v. United States and the Categorical Approach, 82 Brook. L. Rev. 1275, 1277 (2017))).  There thus must be some

allowance -- like that which the Court discusses in the context of the Mendenhall-Benally interplay -- for courts, when awarding victim restitution, to look beyond the elements of the defendant's offense of conviction.

It is true that the United States can draft its indictments and plea agreements to provide restitution when the statute would not otherwise permit it. See 18 U.S.C. § 3663(a)(1)(A), (a)(2) (permitting, "if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense," i.e., to persons not "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered"); 18 U.S.C. § 3663A(a)(2)-(3) (permitting, on same basis, restitution to non-victims by plea agreement).   Still, this safety valve does not reduce the analytical tension that an absolutist approach, which does not consider any coincident factual features to the "the conduct underlying the offense of conviction," Hughey, 495 U.S. at 416, engenders.

This Mendenhall-Benally rule also goes some way toward blunting the tension between the rule that Mendenhall alone, and other cases, represent and the rule of such cases as the Sixth Circuit's Ruiz-Lopez, which, as discussed, directs district courts to look beyond the offense of conviction's elements.[30]   Although the emphases in Benally and Ruiz-Lopez are not identical, they

---

[30]Benally and Ruiz-Lopez articulate a similar thesis.  Compare Benally, 19 F.4th at 1259 ("Nothing in [the MVRA's] statutory language limits [a victim's] 'harm' to injuries or death that are essential elements of the offense of conviction."), with Ruiz-Lopez, 53 F.4th at 405 ("[T]he amended restitution statutes permit district courts to award restitution based on facts not strictly required to secure a conviction.").  Benally does not suggest that restitution was proper because the defendant's passenger's "unlawful killing," 18 U.S.C. § 1112(a) -- a "fact . . . strictly required to secure a conviction," Ruiz-Lopez, 53 F.4th at 405 -- caused the other driver's harms.  It is sufficient that the conduct manifesting "facts . . . strictly required to secure a conviction," Ruiz-Lopez, 53 F.4th at 405, "cannot reasonably be divided," Benally, 19 F.4th at 1259, from the conduct harming the victim.  Both cases satisfy the threshold Hughey requirement that "the conduct underlying the offense of conviction"  caused the victim's harms.  Hughey,  495 U.S. at 416.

involve the same structure of the relationship between the conduct that manifests the elements of

the defendant's offense of conviction and the harms to the victim.  In Ruiz-Lopez, the conduct that

---

Certain distinctions exist between these cases, however.  Benally's indivisibility principle does not map precisely on to the Ruiz-Lopez facts.  It is harder to separate out the elements-satisfying features of Benally's conduct from its victim-harming features, than it is to do the same for Ruiz-Lopez's conduct.  The same car crash both killed the Benally passenger, thereby satisfying the involuntary manslaughter offense's elements, and also injured the other driver.  See Benally, 19 F.4th at 1259.  It is easier to separate out the element-satisfying features of Ruiz-Lopez's conduct from its victim-harming features: disentangling Ruiz-Lopez's mere holding of a firearm from his recklessly discharging it.  See Ruiz-Lopez, 53, F.4th at 402.

It is partly fortuity that in the context of Ruiz-Lopez's gun possession crime and Benally's manslaughter crime, the two cases produce the same result.  Other fact patterns would not come out the same on both the Benally-Mendenhall and the Ruiz-Lopez rules.  For example, the result is not the same for the robbery crimes that involved MVRA victims harmed during the defendant's escape in Washington, 434 F.3d at 1266-67, and Donaby, 349 F.3d at 1054-55.  Although Ruiz-Lopez indicates its approval of the result in those cases, see Ruiz-Lopez, 53 F.4th at 405, the Tenth Circuit's rule, based on Mendenhall, would offer a different result.  Escape is not an element of the robbery statute.  See 18 U.S.C. § 2113(a).  Per the Mendenhall side of the Tenth Circuit's rule, therefore, a restitution order predicated on the defendant's violent flight from a robbery would be improper:  the defendant's offense of conviction's "elements [must] cause[] the losses cited as the basis for the restitution order."  Mendenhall, 945 F.3d at 1268.  Mendenhall's elements-first interpretation of Hughey's rule that restitution can be ordered "only for losses caused by the conduct underlying the offense of conviction," Hughey, 495 U.S. at 416, therefore, prevents recovery here.  Because the Sixth Circuit and others like it do not share the Mendenhall's interpretation of Hughey, the Sixth Circuit would award restitution:   "'Although flight is not an element of bank robbery,' restitution for the harm caused by fleeing bank robbery was proper because it "directly and proximately result[ed] from the robbery.'"  Ruiz-Lopez, 53 F.4th at 405 (quoting Washington, 434 F.3d at 1268)(alterations in Ruiz-Lopez, not in Washington).

Therefore, although a principle in Benally similar to one seen in Ruiz-Lopez permits restitution based on features of a defendant's conduct for which the defendant's offense of conviction's elements do not call explicitly, compare Benally, 19 F.4th at 1259 ("Nothing in [the MVRA's] statutory language limits [victim] 'harm' to injuries or death that are essential elements of the offense of conviction."), with Ruiz-Lopez, 53 F.4th at 405 ("[T]he amended restitution statutes permit district courts to award restitution based on facts not strictly required to secure a conviction."), still that permission Benally affords remains tempered, in a way that the Ruiz-Lopez allowance is not, by the Mendenhall requirement that the conduct underlying the offense's elements have a starring causal role, see Mendenhall, 945 F.3d at 1268 (rejecting restitution order because "[n]one of the[] elements [of the offense of conviction] caused the losses cited as the basis for the restitution order").  As noted, there cannot be complete elimination of the tension among the Courts of Appeals on this issue, but at least some softening of the division is possible.

came within the elements of the defendant's offense is the same conduct which caused the victim's harms. The defendant "possess[ed] in . . . commerce[] any firearm" while "being an alien . . . illegally in the United States," 18 U.S.C. § 922(g)(5)(A), at the same time that he "possessed the gun in a reckless fashion," Ruiz-Lopez, 53 F.4th at 404. Similarly, the Benally defendant's conduct both came within the elements of the statute and also caused the victim's harms. Compare Benally, 19 F.4th at 1259 ("Benally's act of crashing her car head-on into J.G.'s car cannot reasonably be divided into any sub-parts that would have allowed the district court to classify L.C. as the only victim of the offense of conviction."), with 18 U.S.C. § 1112(a) ( defining involuntary manslaughter as "the unlawful killing of a human being without malice"). In both cases, the defendant's conduct manifested characteristics bringing the conduct within the statute's elements and manifested simultaneously other, inessential characteristics that caused that victim's harms. Accordingly the above described resolution between Mendenhall and Benally, which would allow harms to flow from factual characteristics of a defendant's conduct that obtain simultaneously with element-satisfying characteristics, is both possible and necessary.[31]

---

[31]Taken too far, however, Benally threatens to unravel the Mendenhall rule that focuses causation analysis on the offense of conviction's elements. Potentially, every felon-in-possession defendant who pleads guilty on that charge, but whose underlying conduct involved, e.g., shooting someone, would owe restitution: the defendant who shoots another person simultaneously possessed, as a felon, the firearm used in the shooting. So too, if a felon possesses a firearm while fleeing from police, and the escape causes damage to other vehicles or structures. The Court's coincident-features-occurring-simultaneously interpretation of Benally would permit restitution, because the defendant is both engaged in the escape, during which he causes injuries, and simultaneously satisfying the offense's elements by knowingly holstering a firearm as a felon.

This consequence threatens the result found in Reed, where the defendant pled to felon-in-possession when he possessed a firearm during a car chase in which several vehicles were damaged, and the appellate court overturned the restitution award as to damaged vehicles. See Reed, 80 F.3d at 1420. The consequence likewise is against the result in Penn, where the defendant pled guilty to felon-in-possession, and the Fifth Circuit reversed the restitution order as to victims of the defendant's underlying conduct during a gunfight. See Penn, 969 F.3d at 453-54, 458-59.

2.      **A Hypothetical Scenario Illustrates the Contours of the Rule that the Tenth Circuit's Cases** Mendenhall **and** Benally **Produce.**

The following hypothetical scenario illustrates the contours of the Tenth Circuit's caselaw. The relevant constraints are the following: (i) per Mendenhall, the victim's harms must flow from conduct that the United States in the charging instrument or plea agreement identifies explicitly as the conduct satisfying the offense's elements, see Mendenhall, 945 F.3d at 1268-69 ("[T]he information [in Burns, 775 F.3d at 1224] was drafted broadly enough to capture the [stolen items]. . . . Accordingly, the charged conduct in Burns was broad enough to encompass the restitution ordered, whereas here it is not."); (ii) per Mendenhall, the conduct causing MVRA victim harm must be tied explicitly to the elements of the defendant's offense of conviction, see Mendenhall, 945 F.3d at 1268 (rejecting restitution order, because "[n]one of the[] elements [of the offense of conviction] caused the losses cited as the basis for the restitution order"); and (iii) per Benally, the victim's harms may be caused by facts about the defendant's conduct that the offense's elements do not explicitly require, so long as those aspects obtain simultaneously with the facts about the conduct that the offense's elements require, see Benally, 19 F.4th at 1259 ("Nothing in [the MVRA's] statutory language limits [victim] 'harm' to injuries or death that are essential elements of the offense of conviction.").  The following scenario illustrates these principles.

_____

The same tension does not affect, however, the result in Mendenhall, 945 F.3d at 1266, 1268-69, and in Davis, 714 F.3d at 811, 813-14, both of which involve possession-a-of-stolen-firearms offenses: the defendant's conduct could not fulfill the dictates of the possession-of-stolen-firearms offense's elements, and simultaneously effectuate the robbery during which the defendant stole the firearms that provided grist for the offense.  The statute's elements necessitate some temporal lapse between the act of stealing and the act of possession.  Cf. 18 U.S.C. § 922(j) ("It shall be unlawful for any person to . . . possess . . . any stolen firearm . . . knowing . . . that the firearm . . . was stolen.")(emphasis added).  Nonetheless, for many possession crimes -- a defendant can possess a firearm, ammunition, or drugs, while doing any number of harmful activities; the Benally rule should not be taken too far.

On January 1, the defendant, Jones, enters a gun shop, threatens the store clerk with a knife, and steals money and a firearm; later that day, Jones enters a nearby liquor store, brandishes the stolen firearm and demands the contents of the cash register, with which the store clerk complies; Jones then returns home.  One week later, on January 8, police arrest Jones at his home, and, when arrested, he has on his person the stolen firearm, but the money from the gun shop and the liquor store is not recovered.  To incentivize Jones' guilty plea, the United States charges him only under 18 U.S.C. 922(j), knowing possession of a stolen firearm.  This offense would permit restitution under the VWPA, because it is an offense in Title 18 of the United States Code, see 18 U.S.C. § 3663(a)(1)(A) ("The court, when sentencing a defendant convicted of an[y] offense under [Title 18] . . . may order . . . that the defendant make restitution to any victim of such offense."), but it would not mandate restitution under the MVRA, because it is not a crime triggering that statute, cf. 18 U.S.C. § 3663A(c)(1)(A) (identifying offenses that trigger MVRA restitution, including crimes of violence and offenses against property).  Direct and proximate causation operate the same way under the VWPA and MVRA, however.  Compare 18 U.S.C. § 3663(a)(2) ("[T]he term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ."), with 18 U.S.C. § 3663A(a)(2) (defining "victim" identically).  See United States v. Serawop, 505 F.3d at 1118 (noting that, aside from the mandatory versus discretionary quality, the "provisions of the VWPA and MVRA are nearly identical in authorizing an award of restitution" (quoting United States v. Randle, 324 F.3d 550, 555-56 & nn.2-3 (7th Cir. 2003)).

In the Tenth Circuit, whether the victimized gun shop and liquor store are MVRA "victim[s]" turns on a number of factors, beginning with how the United States drafts the plea agreement.  The United States must identify explicitly what conduct violates the statute, and

MVRA restitution will be tacked to such conduct.  See Mendenhall, 945 F.3d at 1269 ("[T]he government can avoid restitution problems in the way it charges criminal conduct or reaches plea agreements."); id., 945 F.3d at 1268-69 (approving restitution where "the information . . . was drafted broadly enough to capture the [stolen items]" so that "the charged conduct . . . was broad enough to encompass the restitution ordered").  See also United States v. Dodson, 2022 WL 1409572, at *3-4 (affirming restitution award for arson committed during early hours of September 16 where indictment "charged Mr. Dodson with setting the fire '[o]n or about September 15'" (quoting Record on Appeal, Vol. I at 8)(emphasis in original));  United States v. Allen, 983 F.3d 463, 472-73 (10th Cir. 2020)("[A] restitution order cannot compensate for losses stemming from conduct that occurred outside the charged period.").

Here, the United States could peg the plea agreement to two dates:  (i) on or about January 1, the defendant knowingly possessed a stolen firearm; or (ii) on or about January 8, the defendant knowingly possessed a stolen firearm.  If the former, then, as will be discussed in greater detail, Jones' conduct within the elements of the offense is the same conduct that proximately caused the victim's losses: the "conduct underlying [Jones'] offense of conviction," Hughey, 495 U.S. 416, knowing possession of a stolen firearm, on January 1 involved his robbing the liquor store with the stolen gun.  If the United States drafts the plea agreement in the latter, January 8 manner, however, then MVRA recovery would not be available:  the "conduct underlying [Jones'] offense of elements in these circumstances merely would be Jones' presence at home with the stolen firearm by his side; this conduct is not the same act of firearm possession that is, simultaneously, an act of robbery.  On this approach, then, no VWPA restitution is available.  As Mendenhall instructs, "the government can avoid restitution problems in the way it charges criminal conduct or reaches plea agreements." Mendenhall, 945 F.3d at 1269.  In the United States' effort to secure

Jones' guilty plea, it has foregone the possibility of restitution to the robbery victims.  Cf. Mendenhall, 945 F.3d at 1269 ("[P]rosecutorial decisions to frame indictments with a 'view to success at trial rather than to a victim's interest in full compensation' are made with a full understanding of the potential consequences. . . . There are tradeoffs in such decisions." (quoting Hughey, 495 U.S. at 421)).

If the United States pegs the plea agreement to January 1, the day of the robbery, however, there can be restitution, but only to the liquor store.  On this approach, Mendenhall's drafting principle, at least, would be satisfied.  Cf. Mendenhall, 945 F.3d at 1268-69 (approving restitution where "the information . . . was drafted broadly enough to capture the [stolen items]" so that "the charged conduct . . . was broad enough to encompass the restitution ordered").  The indictment and plea agreement would state that, on or about January 1, the defendant knowingly possessed a stolen firearm.  Under these instruments, restitution can be ordered as to the liquor store, but not as to the gun store.  Mendenhall's rule that the restitution victim's harms flow from the elements of the defendant's offense of conviction  cannot be satisfied as to the gun shop robbery.  The stolen firearm possession statute requires that Jones "possess . . . any stolen firearm . . . which has been . . . transported in[] interstate . . . commerce . . . knowing or having reasonable cause to believe that the firearm . . . was stolen."  18 U.S.C. § 922(j).  Although the stolen firearm that the offense's elements require came from the gun shop, and the theft therefrom "'represent necessary steps in the accomplishment' of the convicted offense, they [are] 'legally irrelevant for the purpose of restitution.'"  Mendenhall, 945 F.3d at 1268 (quoting Davis, 714 F.3d at 814)(alterations added).  The "conduct underlying the offense of conviction," Hughey, 495 U.S. at 420, as Mendenhall understands that principle, did not cause the gun shop's harms, because Jones' "knowing possession of stolen firearms . . . cannot reasonably be said to have caused the [victim's] damage,"

Mendenhall, 945 F.3d at 1268.  Jones' possession of that firearm was not what effectuated the robbery; his possession of a knife accomplished it.  Jones' possession of the stolen gun was, along with the stolen money, the fruit of his crime, but not the cause that effectuated it, so "[n]one of the[] [offense's] elements caused the losses cited as the basis for the restitution order." Mendenhall, 945 F.3d at 1268.  Thus, insofar as Mendenhall identifies the "conduct underlying the offense of conviction," Hughey, 495 U.S. at 420, as the conduct underlying the elements of the defendant's offense, then no restitution can be ordered as to the gun shop.

The liquor store can, however, receive restitution, because of the Benally rule that a victim's harms may flow from coincident factual characteristics not strictly called for by the offense's elements.  When Jones entered the liquor store and brandished the stolen firearm, he simultaneously robbed the liquor store and committed the possession offense of which he was later convicted.  His conduct in the liquor satisfied the elements of the offense: Jones "possess[ed] . . . a[] stolen firearm . . . which has been . . . transported in[] interstate . . . commerce . . . knowing . . . that the firearm . . . was stolen."  18 U.S.C. § 922(j).  His conduct also has factual characteristics for which the statute does not call -- e.g., drawing the stolen gun, waiving it in the face of another person, using threatening language in connection therewith -- that obtain simultaneously to the factual characteristics for which the statute calls.  Under the Court's reading of the rule that Benally and Mendenhall produce, restitution can be ordered as to the harm that these extraneous, coincident facts cause.  Cf. Benally, 19 F.4th at 1259 ("Nothing in [the MVRA's] statutory language limits [victim] 'harm' to injuries or death that are essential elements of the offense of conviction.").  Because the conduct that satisfies the elements of the offense of conviction "cannot reasonably be divided," Benally, 19 F.4th at 1259, from the conduct causing the victim's harms, restitution is appropriate.

As discussed above, if the absolutist view is adopted of the required relationship between the elements of the offense and the victim's harms, then no restitution is appropriate.  If victim harm must flow only from the elements of the defendant's offense, then the court cannot consider Jones' brandishing of the stolen firearm because the offense does not call therefore.  Cf. 18 U.S.C. § 922(j) ("It shall be unlawful for any person to . . . possess . . . any stolen firearm . . . which has been . . . transported in[] interstate . . . commerce . . . knowing . . . that the firearm . . . was stolen."). The restitution-awarding court could only consider what harms flow from the possession of a firearm and the knowledge that it was stolen.  As the Court discussed, it is unlikely that any victim's harms ever flow from conduct characterized in this light, i.e., no robbery victim turns over his money because, specifically, he knows the ownership status of the firearm used in the robbery. This interpretation cannot be the proper one of Mendenhall's version of the Hughey rule that only "the conduct underlying the offense of conviction," Hughey, 495 U.S. at 416, can cause a restitution victim's harm.  Instead, the above result -- restitution is appropriate for the liquor store because the victim-harming characteristics of Jones' conduct obtain simultaneously with his conduct's element-underlying characteristics -- is the proper one under the proper reading of the Tenth Circuit's decisions in Mendenhall and Benally. [32]

_____

[32]Taken too far, however, the Benally influence threatens to unravel the Mendenhall rule that focuses causation analysis on the offense of conviction's elements.  Potentially, every felon-in-possession defendant who pleads guilty on that charge, but whose underlying conduct involved, e.g., shooting someone, would owe restitution: the defendant who shoots another person simultaneously possessed, as a felon, the firearm used in the shooting.  So too, if a felon possesses a firearm while fleeing from police, and the escape causes damage to other vehicles or structures. The Court's coincident-features-occurring-simultaneously interpretation of Benally would permit restitution, because the defendant is both engaged in the escape, during which he causes injuries, and simultaneously satisfying the offense's elements by knowingly holstering a firearm as a felon.
     This consequence threatens the result found in Reed, where the defendant pled to felon-in-possession when he possessed a firearm during a car chase in which several vehicles were damaged, and the appellate court overturned the restitution award as to damaged vehicles.  See

This hypothetical should make clear the contours of the Court's understanding of the Tenth Circuit's restitution causation doctrines. As discussed above, Mendenhall is equivalent to those circuits like the Fourth, Fifth, and Ninth Circuits that also have taken the elemental approach to MVRA proximate causation; these courts and others that have implied a similar approach to the analysis likely would come out similarly on the same facts.[33] The above principles represent the

---

Reed, 80 F.3d at 1420. The consequence likewise is against the result in Penn, where the defendant pled guilty to felon-in-possession, and the Fifth Circuit reversed the restitution order as to victims of the defendant's underlying conduct during a gunfight. See Penn, 969 F.3d at 453-54, 458-59.

The same tension does not affect, however, the result in Mendenhall, 945 F.3d at 1266, 1268-69, and in Davis, 714 F.3d at 811, 813-14, both of which involve possession-a-of-stolen-firearms offenses: the defendant's conduct could not fulfill the dictates of the possession-of-stolen-firearms offense's elements, and simultaneously effectuate the robbery during which the defendant stole the firearms that provided grist for the offense. The statute's elements necessitate some temporal lapse between the act of stealing and the act of possession. Cf. 18 U.S.C. § 922(j) ("It shall be unlawful for any person to . . . possess . . . any stolen firearm . . . knowing . . . that the firearm . . . was stolen.")(emphasis added). Nonetheless, for many possession crimes -- a defendant can possess a firearm, ammunition, or drugs, while doing any number of harmful activities; the Benally rule should not be taken too far.

[33]See Davis, 714 F.3d at 814 (holding that "the homeowner cannot 'be considered a victim under § 3663,'" because "the specific conduct underlying the elements of the offense, 'and thus forming the basis for [the] offense of conviction, does not include the theft'" that the homeowner suffered (quoting Blake, 81 F.3d at 506-07)); Penn, 969 F.3d at 458 ("The specific conduct underlying the elements of the felon-in-possession offense does not include use of a firearm or flight from police. As a result, neither the owner of the car nor the owner of the fence is a 'victim' of Penn's conviction."); Reed, 80 F.3d at 1420 (rejecting the proposition that "a judge may order restitution under the [VWPA] . . . for conduct that is not an element of the offense of conviction"). See also Paradis, 219 F.3d at 24-25 ("While the trustee may be a victim of bankruptcy fraud, that was not the charge against Paradis. His offense was laundering the proceeds of the fraud. There is no evidence that the trustee was harmed as a result of this offense."); Varrone, 554 F.3d at 334 ("[The victim] Bruss's loss was directly caused by a fraudulent scheme, and not by [the defendant] Castello's failure to file CTRs. Accordingly, Castello's offense conduct lacks the causal nexus to Bruss's loss required under Hughey, and the restitution order is not authorized."); United States v. Udo, 795 F.3d 24, 33-34 & 34 n.6 (D.C. Cir. 2015)(citing United States v. Freeman, 741 F.3d 426 (4th Cir. 2014); United States v. Austin, 479 F.3d 363 (5th Cir. 2007)).

Although those courts have not spoken precisely to the issue that Benally identifies, as to causation by extraneous facts occurring simultaneously with element-satisfying facts, those Courts of Appeals may in some cases reach similar results as described above. Cf. See United States v. Yijun Zhou, 838 F.3d 1007, 1013 (9th Cir. 2016)(permitting MVRA restitution to more victims

Court's understanding of the law applicable to MVRA and VWPA restitution causation principles in the Tenth Circuit.

> **C.     BASED ON THE PRINCIPLES OF <u>BENALLY</u>-<u>MENDENHALL</u>, MICHAUD CANNOT BE FORCED UNDER THE MVRA OR THE VWPA TO MAKE RESTITUTION TO ANY VICTIM OF HIS ROBBERY BECAUSE THE CONDUCT UNDERLYING HIS OFFENSE OF CONVICTION DID NOT DIRECTLY OR PROXIMATELY CAUSE THOSE VICTIMS' LOSSES.**

The Court turns now to the application of these rules to Michaud's case.  Based on the principles described above, the Court has no authority to order Michaud pay restitution to any of the victims of the Sandia facility theft; no victim's losses can be recompensed, including for the disputed items, namely, Code 3's Fostex speaker and Relevant Radio's Tripp Lite device. Applying the Tenth Circuit's principles, the "conduct underlying [Michaud's] offense of conviction," <u>Hughey</u>, 495 U.S. at 416, did not cause the loss to the victims of the Sandia facility. Although Michaud admits that he robbed these entities, Michaud's situation represents one where, as <u>Mendenhall</u> notes, "prosecutorial decisions to frame indictments with a 'view to success at trial rather than to a victim's interest in full compensation' are made with a full understanding of the potential consequences."  <u>Mendenhall</u>, 945 F.3d at 1269 (quoting <u>Hughey</u>, 495 U.S. at 421). Michaud's situation is one where the United States has decided that the "tradeoffs in such decisions," <u>Mendenhall</u>, 945 F.3d at 1269, favor securing conviction rather than ensuring victim restitution.  Indeed, the United States effectively has admitted that it made such a choice.  <u>Cf.</u> Oct.

---

than the one mentioned at the plea colloquy, because the "Defendant did not plead guilty only to the Nordstrom allegations -- he pleaded guilty to Count One of the indictment," and because "Congress likely intended restitution to all victims within the scope of an admitted crime, even if the parties focused primarily on one set of victims at the plea colloquy"); <u>United States v. Bailey</u>, 974 F.2d 1028, 1033-34 (4th Cir. 1992)(rejecting the proposition that restitution was proper only with respect to investors specifically named in the indictment where the "offense was broadly defined in the indictment").

29 April 11 Tr. at 9:8-11 (Mendenhall)("The Government's principal interest in this is making sure that Mr. Michaud comes out of this case with a felony conviction and that he comes out of this with supervision.").

The Court first must determine what constitutes, for purposes of restitution, Michaud's "offense of conviction." 18 U.S.C. § 3663A(a)(2). The Court can look at more than just the charges in the Indictment to which Michaud pled guilty, including the facts to which Michaud admits in the Plea Agreement and in the plea colloquy. Cf. Mendenhall, 945 F.3d at 1266 (considering what facts the defendant's indictment and plea agreement contained, and noting that, "[i]n the plea colloquy, [Mendenhall] did not go further and accept guilt for the burglary or other related acts" underlying his stolen firearm possession offense). As to a PSR's contribution to the analysis, "when the law provides for restitution" a PSR must include "information sufficient for a restitution order," Fed. R. Crim. P. 32(d)(2)(D), and the Court may, for sentencing purposes, "accept any undisputed portion of the presentence report as a finding of fact," Fed. R. Crim. P. 32(i)(3)(A). Because, however, it is only for "charged conduct," Mendenhall, 945 F.3d at 1269, that the Court may order restitution, the Court cannot consider uncharged conduct and related conduct that the PSR discusses, even if undisputed, if those facts do not constitute the "offense of conviction," 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2), for which restitution can be ordered, cf. United States v. Lynch, 345 F. App'x at 803 ("Where, as here, the conviction is the result of a plea agreement, 'we look to the plea agreement and colloquy' to determine what is the 'offense of conviction.'" (quoting United States v. Akande, 200 F.3d at 142)); United States v. Elson, 577 F.3d 713, 723 (6th Cir. 2009)("Because Elson was convicted pursuant to a guilty plea rather than by a jury, the court should look to the plea agreement, the plea colloquy, and other statements made by the parties to determine the scope of the 'offense of conviction' for purposes of

restitution."), abrogated on other grounds by Lagos, 138 S. Ct. 1684; United States v. Adams, 363

F.3d 363, 367 (5th Cir. 2004)("When a defendant pleads guilty to fraud, . . . the scope of the

underlying scheme is defined by the parties themselves. The mutual understanding reached by

parties during plea negotiations is . . . often gleaned from any superseding indictments, plea

agreements, and statements made by the parties during plea and sentencing hearings.").  Even the

undisputed portions of a PSR cannot expand the framework for criminal liability that the United

States chooses to establish for the defendant's conduct, i.e., to the extent that the PSR's undisputed

portions concern uncharged conduct.  See Mendenhall, 945 F.3d at 1269 ("The government's

reliance on the facts admitted in the PSR is . . . unavailing.  Although the district court accepted

the PSR, including its facts regarding the burglary of H&H, without objection at sentencing, those

facts fail to support the district court's order of restitution." (citing United States v. Ward, 182

F. App'x 779, 802 (10th Cir. 2006)("[T]he guidelines permit a district court to consider a

defendant's uncharged conduct, as well as conduct for which he was acquitted, in calculating the

defendant's sentence[,] . . . [but] the same finding [as to uncharged or acquitted conduct] cannot

be used as a basis to order restitution."))).

Here, Michaud admitted to few facts beside what is required to satisfy the elements of the

offenses the Indictment charges him with committing.  The Indictment itself has few facts:

> On or about December 14, 2020, in Bernalillo County, in the District of
> New Mexico, the defendant, COREY MICHAUD, intentionally accessed a
> computer without authorization, and thereby obtained information from a protected
> computer.

> In violation of 18 U.S.C. §§ 1030(a)(2) and (c)(2)(A), and 18 U.S.C. § 2.
> . . .

> On or about February 2, 2021, in Bernalillo County, in the District of New
> Mexico, the defendant, COREY MICHAUD, knowing that he was an unlawful user

of and addicted to any controlled substance, knowingly possessed ammunition in and affecting commerce.

In violation of 18 U.S.C. §§ 922(g)(3) and 924.

Indictment at 1.  The Plea Agreement contains few additional facts:

I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

On or about December 14, 2020, I intentionally accessed a computer without authorization and obtained information from that computer. The computer was connected to the internet, and I knew that I was not authorized to access the computer because I had previously stolen it from a business at the Sandia Crest Communications Site. I accessed the computer from my then-residence in Albuquerque, New Mexico, which is in Bernalillo County.

On or about February 2, 2021, I knowingly possessed ammunition, namely, 60 rounds of 5.56mm green-tip ammunition. I possessed the ammunition in Bernalillo County, New Mexico. At the time, I knew that I was an unlawful user of and addicted to a controlled substance. The ammunition had previously travelled in interstate commerce.

Plea Agreement ¶ 9, at 5.  Michaud admitted few further details at the guilty plea colloquy; the

whole of the colloquy before Judge Briones as to the factual basis of the offenses to which Michaud

pled guilty went thus:

Briones, J.:    I'm going to ask you to tell me in your own words, what did you do that makes you guilty of the crimes as charged?

Michaud:        For Count I, possessed and accessed a protected computer knowingly.  And for Count 2, I was under the influence or addicted to a controlled substance, and possessed ammunition at the same time.

Briones, J.:    When you took possession of that computer, were you authorized to do so?

Michaud:        No, I was not.

Briones, J.:    Did you have authorization to even access the computer?

Michaud:        No, I did not.

> Briones, J:      How did you get to it?  In other words, was it at your worksite, or what was it?
>
> Michaud:      It was a building I knew of, and I went in, took the computer and accessed it.
>
> Briones, J:      Okay. And you knew you didn't have the lawful right to be in possession of it?
>
> Michaud:      Yes.

September 10 Hearing at 10:58:30-11:02:29 (Briones, J., Michaud).  The United States indicated it was satisfied with Michaud's statement of the facts.  See September 10 Hearing at 11:02:00-02:29 (Briones, J., Fontanez).  Notably, Michaud's statement of facts does not make explicit reference to the Sandia break-in: explaining where he got the computer that he accessed without authorization in violation of the statute, Michaud stated only that, "It was a building I knew of, and I went in, took the computer and accessed it."  September 10 Hearing at 10:59:30 (Michaud).  The United States admitted effectively that the federal statutes at its disposal were a poor fit for Michaud's underlying conduct and that the offenses of conviction are only tangentially related to what makes Michaud a fit subject for criminal punishment.  See October 29 Tr. at 9:25-10:7 (Gerson)("We permit [sic] this case with recognition with the recognition of underlying offense of burglary of these radioed stations is a state law offense the way that we're able to reach this conduct is through Mr. Michaud's misuse of a piece of electronics that was stolen during that burglary, and finding him to be in possession of ammunition at the time he was taken into custody.").

These facts make out the "conduct underlying [Michaud's] offense of conviction," Hughey, 495 U.S. at 416: that conduct is only what was necessary to satisfy the offenses of which he was convicted, the computer access offense, 18 U.S.C. § 1030(a)(2)(C), (c)(2)(A), and the drug-addict-in-possession offense, 18 U.S.C. §§ 922(g)(3), 924.  As will be discussed further below, that the

computer access offense facts to which Michaud admits allude to the Sandia facility break-in ultimately does not supply a ground upon which to make restitution for all of that robbery's victims, or even to the business from which Michaud stole the computer he accessed illegally. Although Michaud admitted at the restitution hearing to the underlying Sandia Crest burglary, see April 11 Tr. 51:5-16 (Mendenhall, Michaud), and although he did not object to the PSR containing those facts, see Addendum at 1, those admissions do not go toward identifying what constitutes, for restitution purposes, Michaud's "offense of conviction," 18 U.S.C. § 3663(a)(2), 3663A(a)(2).

The MVRA would mandate restitution for Michaud's unauthorized computer access offense because that offense is "an offense against property." 18 U.S.C. § 3663A(c)(1)(A)(ii). See United States v. Steele, 595 F. App'x 208, 215-16 (4th Cir. 2014)(approving MVRA restitution for 18 U.S.C. § 1030(a)(2) offense as an "offense against property"). The VWPA permits restitution for the possession offense, because it is within Title 18. See 18 U.S.C. § 3663(a)(1)(A) ("The court, when sentencing a defendant convicted of an offense under [Title 18], . . . may order . . . that the defendant make restitution to any victim of such offense. . . ."). The PSR speaks only to MVRA restitution, although it does not make clear which offense triggers the MVRA. See PSR ¶ 21, at 6 ("The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense."); id. ¶ 90, at 17-18 ("Pursuant to 18 U.S.C. § 3663A, restitution shall be ordered in this case. Restitution is due and owing to the victims of the instant offense."). Indeed, an important flaw in the PSR, and one which reflects the impropriety of ordering restitution here, is that the PSR suggests that the offense for which restitution can be ordered is Michaud's underlying theft, and not either his unauthorized-computer-access offense or his addict-in-possession-of-ammunition offense. Cf. PSR ¶¶ 21, at 6 ("[USPO and FBI] ha[ve] confirmed 8 out of 10 standby batteries, 240-volt portable heater and four power inserters were not recovered, and the remaining items

stolen from the instant offense will be returned . . . [once FBI determines] ownership of each item.")(emphasis added).

The Court will address whether either or both offenses of conviction caused victim harms for which restitution can be ordered either under the MVRA or the VWPA.  Ultimately, no person was "directly and proximately harmed as a result of [Michaud's] commission of a[n MVRA-triggering] offense," 18 U.S.C. § 3663A(a)(2), nor was any person so harmed "as a result of [his] commission of a [VWPA-triggering] offense," 18 U.S.C. § 3663(a)(2).  Both Count I's 18 U.S.C. § 1030(a)(2) offense and Count 2's 18 U.S.C. § 922(g)(3) and 18 U.S.C. § 924 offenses, to which Michaud pled guilty, are non-scheme offenses.  Accordingly the conduct underlying neither statute can benefit from the wider causal web that restitution under such offenses enjoy.  Cf. 18 U.S.C. § 3663A(a)(2) ("[T]he term 'victim' means[,] . . . in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."); 18 U.S.C. § 3663(a)(2) (same rule); United States v. Matos, 611 F.3d 31, 43 (1st Cir. 2010)("[T]he district court may order restitution without regard to whether the conduct that harmed the victim was conduct underlying the [scheme] offense of conviction." (quoting United States v. Acosta, 303 F.3d 78, 86-87 (1st Cir. 2002)).  Accordingly, these non-scheme offenses of Michaud's are analyzed under the Tenth Circuit's Mendenhall-Benally framework.  The "conduct underlying [Michaud's] offense[s] of conviction," Hughey, 495 U.S. at 416, as the Tenth Circuit develops that principle, did not cause harm to any victim, so no restitution is in order.

### 1.    The "Conduct Underlying" Michaud's Unauthorized Computer Access Offense Did Not Directly or Proximately Harm Any Victim.

Restitution cannot be ordered for any losses that Michaud's unauthorized computer access offense caused, because the "conduct underlying [this] offense of conviction," Hughey, 495 U.S. at 416, did not directly or proximately cause any victim's harms.  The unauthorized computer access offense is a non-scheme offense, so it comes under Mendenhall-Benally.  Count I's unauthorized access to a protected computer offense possesses the following elements: "Whoever . . . intentionally accesses a computer without authorization . . . and thereby obtains . . . information from any protected computer . . . shall be punished," 18 U.S.C. § 1030(a)(2), by "a fine under this title or imprisonment for not more than one year, or both," 18 U.S.C. § 1030(c)(2)(A).  See Indictment at 1 (charging violation of 18 U.S.C. §§ 1030(a)(2), (c)(2)(A)); Plea Agreement ¶ 8, at 4 (providing that Michaud pleads guilty to 18 U.S.C. §§ 1030(a)(2), (c)(2)(A)).  As noted, the United States' indictment is thin on facts.  See Indictment at 1 ("On or about December 14, 2020, in Bernalillo County, in the District of New Mexico, the defendant, COREY MICHAUD, intentionally accessed a computer without authorization, and thereby obtained information from a protected computer [i]n violation of 18 U.S.C. §§ 1030(a)(2) and (c)(2)(A), and l8 U.S.C. § 2.").  The Plea Agreement did not add many more details:

> On or about December 14, 2020, I intentionally accessed a computer without authorization and obtained information from that computer. The computer was connected to the internet, and I knew that I was not authorized to access the computer because I had previously stolen it from a business at the Sandia Crest Communications Site. I accessed the computer from my then-residence in Albuquerque, New Mexico, which is in Bernalillo County.

Plea Agreement ¶ 9, at 5.  Michaud, at the plea colloquy, was even vaguer.  See September 10 Hearing at 10:59:30 (Michaud)(explaining that, as to provenance of the computer he accessed

without authorization, "[i]t was a building I knew of, and I went in, took the computer and accessed it").

Michaud's conduct underlying this offense -- how the United States indicted it, and how Michaud admitted to the offense in the Plea Agreement and at the colloquy -- cannot satisfy the Mendenhall rule that the harms flow from the conduct underlying the offense's elements. The losses cited as the basis for the restitution order come from Michaud's theft at the Sandia facility; as noted, the PSR inappropriately suggests that the theft, and not the statutes under which Michaud was convicted, constitutes the offense of conviction. See PSR ¶ 21, at 6 (noting that federal authorities "confirmed 8 out of 10 standby batteries, 240-volt portable heater and four power inserters were not recovered," and noting continuing efforts to identify ownership of "the remaining items stolen from the instant offense" that were recovered)(emphasis added); Addendum at 1-2 (listing losses that the theft's victims sustained). These losses are not those Michaud caused by "intentionally accesses[ing] a computer without authorization . . . and thereby obtain[ing] information from a[] protected computer." 18 U.S.C. § 1030(a)(2)(C).

The victims whose harms directly and proximately flow from such an offense and its elements include persons that the release of sensitive information harmed and owner-operators of computer networks that the defendant breached. For example, in United States v. Steele, 595 F. at 215-16, an employer was a valid MVRA victim where the defendant "spent nine months secretly logging in to the email server of his former employer, gaining access to confidential and proprietary information related to its government contract bids" in violation of 18 U.S.C. § 1030(a)(2). United States v. Steele, 595 F. App'x at 215-16, overruled on other grounds by Lagos,

138 S. Ct. at 1689-90.[34]   See also United States v. Batti, 631 F.3d 371, 379-80 (6th Cir. 2011)(holding employer was valid MVRA victim whose employee breached its computer system in violation of, among other statutes, 18 U.S.C. § 1030(a)(2)), overruled on other grounds by Lagos, 138 S. Ct. at 1689-90; United States v. Phillips, 477 F.3d 215, 224 (5th Cir. 2007)(affirming restitution to victim university at which student defendant, from his university computer account, "scan[ned] computer networks and st[ole] encrypted data and passwords" in violation of 18 U.S.C. § 1030(a)(5)(A)), overruled on other grounds by Lagos, 138 S. Ct. at 1689-90; United States v. Nosal, 844 F.3d 1024, 1046-49 (9th Cir. 2016)(holding that employer may be MVRA victim whose defecting employee breached client records in violation of, among other statutes, 18 U.S.C. § 1030(a)(4)), overruled on other grounds by Lagos, 138 S. Ct. at 1689-90.  It is such persons as these whom the conduct underlying computer-access crimes like Michaud's harms.

Although a portion of the Plea Agreement makes reference to a robbery at the Sandia facility, see Plea Agreement ¶ 9, at 6 ("The computer was connected to the internet, and I knew that I was not authorized to access the computer because I had previously stolen it from a business at the Sandia Crest Communications Site."), this allusion is insufficient to provide that the conduct underlying Michaud's § 1030(a)(2) offense caused the harms in the robbery.  For one, the reference in the Plea Agreement is only as to a single robbery victim -- the business from which Michaud

---

[34]Many of these computer-breach MVRA cases were abrogated by Lagos to the extent that they permitted recovery to an MVRA victim for costs incurred in internal investigations, a category of recovery Lagos disallows.  See Lagos, 138 S. Ct. at 1689 (denying MVRA recovery for costs incurred in a victim's private investigation into losses the offender's crime caused, and noting that Congress chose not to "specifically require restitution for 'the full amount of the victim's losses'")(quoting 18 U.S.C. §§ 2248(b), 2259(b), 2264(b), 2327(b)).  Lagos does not affect the holding of these cases that persons that the release of sensitive information harms and business whose computer systems the defendant breaches are MVRA "victim[s]" harmed by a defendant's computer-access offense of conviction.

stole the computer that he accessed without authorization.  See Plea Agreement ¶ 9, at 6 ("I had previously stolen [one computer] from <u>a business</u> at the Sandia Crest Communications Site")(emphasis added).  Even if the United States had drafted the Plea Agreement to refer to the whole of the relevant robbery conduct, however, it would be insufficient.  For example, the United States could have drafted the Plea Agreement to read thus:

> On or about December 14, 2020, I intentionally accessed a computer without authorization and obtained information from that computer.  The computer was connected to the internet, and I knew that I was not authorized to access the computer because I had previously stolen it from a business at the Sandia Crest Communications Site<u>, at the same time that I stole other items from other businesses there, including Code 3 Services, Relevant Radio, City Link Fiber, and Rocky Mountain Ham Radio</u>.

Plea Agreement ¶ 9, at 5 (court's additions emphasized).  Still this approach would be insufficient.  This language comes under the <u>Mendenhall</u> rule: although these steps may be necessary for the accomplishment of the offense of conviction, that conduct cannot be the basis for the restitution award.  <u>Cf.</u> <u>Mendenhall</u>, 945 F.3d at 1268 ("[A]lthough the defendant's 'burglary and theft of the firearm represent necessary steps in the accomplishment' of the convicted offense, they [are] 'legally irrelevant for the purpose of restitution.'" (quoting <u>Davis</u>, 714 F.3d at 814)(Court's alterations)).  Even with additional detail about the theft from other Sandia facility businesses, still the Tenth Circuit's constraint that the elements of the offense of conviction dominate the proximate causation analysis would prevent restitution here.  Like the alluded-to robberies in <u>Mendenhall</u>, and <u>Davis</u>, the United States' charging and plea instruments' allusion alone to robberies for which restitution might be ordered cannot supply a basis for restitution when the elements of the offense of conviction do not include robbery or otherwise speak to such losses.

With the <u>Benally</u> rule, the conduct identified as satisfying the elements of the offense of conviction does not possess attendant, element-extraneous features that caused harm to Michaud's

victims.  The United States pinpointed in time Michaud's conduct as satisfying the offense on December 10, 2020.  See Plea Agreement ¶, at 5; Indictment at 1.  No facts about Michaud's conduct on that date, which occurred after the robbery on November 29, 2020, suggest that his conduct simultaneously satisfied the features of the unauthorized computer access offense and also possessed factual characteristics that effectuated the robbery.  Like the stolen-firearm-possession statute at issue in Mendenhall and in the Fourth Circuit's Davis there is necessarily a gap between the conduct in the theft and the conduct under the elements, at least when Michaud engaged in the "conduct underlying [his] offense of conviction," Hughey, 495 U.S. at 416: to have accessed the computer here without authorization, he must have already stolen it,  compare 18 U.S.C. § 922(j) ("It shall be unlawful for any person to . . . possess . . . any stolen firearm . . . knowing . . . that the firearm . . . was stolen.")(emphasis added), with Plea Agreement ¶ 9, at 5 ("I knew that I was not authorized to access the computer because I had previously stolen it from a business at the Sandia Crest Communications Site.")(emphasis added).  Accordingly, Benally's allowance for a larger swatch of facts about a defendant's conduct to cause a victim's harm cannot supply a grounds for restitution to Michaud's victims.

### 2.    The "Conduct Underlying" Michaud's Ammunition Possession Offense Caused Neither Direct Nor Proximate Harm to Any Victim.

No VWPA restitution can be ordered for Michaud's ammunition possession offense.  The "conduct underlying [this] offense of conviction," Hughey, 495 U.S. at 416, did not "directly [or] proximately harm," 18 U.S.C. § 3663(a)(2), any person such that the Court could order restitution, pursuant to the VWPA on the basis of this Title 18 offense.  See 18 U.S.C. § 3663(a)(1)(A) ("The court, when sentencing a defendant convicted of an offense under this title, . . . may order . . . that the defendant make restitution to any victim of such offense.").  The elements of the possession

offense are as follows: "It shall be unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(3). The United States adduced few facts, and Michaud admitted to committing the crime, but he admitted little more. The Indictment adds no other details. See Indictment at 1 ("On or about February 2, 2021, in Bernalillo County, in the District of New Mexico, the defendant, COREY MICHAUD, knowing that he was an unlawful user of and addicted to any controlled substance, knowingly possessed ammunition in and affecting commerce."). In his Plea Agreement, he admits to the following facts:

> On or about February 2, 2021, I knowingly possessed ammunition, namely, 60 rounds of 5.56mm green-tip ammunition. I possessed the ammunition in Bernalillo County, New Mexico. At the time, I knew that I was an unlawful user of and addicted to a controlled substance. The ammunition had previously travelled in interstate commerce.

Plea Agreement ¶ 9, at 5. At the plea colloquy, he reaffirmed that statement in essentially the same form. See September 10 Hearing at 11:02:02-02:29 (Michaud)("[F]or Count 2, I was under the influence or addicted to a controlled substance, and possessed ammunition at the same time.").

Mendenhall first requires that the losses for which restitution is ordered proceed from the conduct satisfying the offense's elements, and Michaud's possession offense cannot satisfy that rule. Cf. Mendenhall, 945 F.3d at 1268 (rejecting restitution order where "[n]one of [the] elements" of the defendant's offense of conviction "caused the losses cited as the basis for the restitution order"). The losses for which restitution is sought stem from the Sandia facility break-in and robbery; Michaud's "possess[ing] in commerce . . . any . . . ammunition" while being "an unlawful user of or addicted to any controlled substance," 18 U.S.C. § 922(g)(3), did not cause these losses. Those losses have nothing to do with Michaud's possession of ammunition as a drug addict: although, when APD arrested Michaud, he was an addict and had in his possession

ammunition, that arrest occurred two months after he burglarized the Sandia Crest facility, see FOF ¶ 13, and although he was an addict at the time of the burglary and committed the burglary to acquire goods he could sell to fuel his addiction, see FOF ¶¶ 1-3, 33, there is no indication that he used ammunition or a firearm to effectuate the burglary, see FOF ¶ 1-3; supra n.2; because, therefore, the conduct the United States identifies as satisfying the addict-in-possession offense's elements post-dated the burglary, that conduct did not cause burglary victims' losses.  The causal connection thus fails at least on the Mendenhall portion of the analysis.

Nor can the Benally portion save the restitution here.  The rule, as the Court interprets it, allows restitution for harms flowing from coincident factual features extraneous to the offense's elements; that rule cannot provide grounds for restitution in Michaud's case.  Michaud admitted to conduct satisfying the statute's elements that occurred on February 2, 2021.  See Plea Agreement ¶ 9, at 5 ("On or about February 2, 2021, I knowingly possessed ammunition, namely, 60 rounds of 5.56mm green-tip ammunition. . . .  At the time, I knew that I was an unlawful user of and addicted to a controlled substance.  The ammunition had previously travelled in interstate commerce."); Indictment at 1 ("On or about February 2, 2021, in Bernalillo County, in the District of New Mexico, the defendant, COREY MICHAUD, knowing that he was an unlawful user of and addicted to any controlled substance, knowingly possessed ammunition in and affecting commerce."); See September 10 Hearing at 11:02:02-02:29 (Michaud)("[F]or Count 2, I was under the influence or addicted to a controlled substance, and possessed ammunition at the same time.").  No more factual details suggest that while engaging in conduct under the statute, Michaud's conduct concomitantly manifested victim-harming features.  For example, there is no indication that he used the ammunition in question during the break-in: under such circumstances, the Benally rule would allow for restitution as to the robbery because the conduct under the statute "cannot

reasonably be divided," <u>Benally</u>, 19 F.4th at 1269, from the conduct that effectuated the robbery. But in the facts as indicted and admitted, the "conduct underlying [Michaud's] offense of conviction," <u>Hughey</u>, 495 U.S. at 416, did not cause the harm at issue.  The Court can award no restitution under the VWPA for losses that this offense caused.

By way of conclusion, the Court notes that several other Courts of Appeals, such as the Fourth, Fifth, and Ninth Circuits, likely would reach the same result.  Those Courts of Appeals that require a nexus between a victim's harms and the conduct underlying the offense of conviction's elements, as does the Tenth Circuit, likely would hold here that for neither of Michaud's offenses -- the unauthorized computer access offense and the drug addict ammunition possession offense -- did the "specific conduct underlying the elements of [Michaud's] . . . offense[s]," <u>Penn</u>, 969 F.3d at 458, cause the Sandia robbery victims' harms and so restitution is inappropriate.[35]  Other Courts of Appeals too may reach this result.[36]  Among those courts that,

---

[35]<u>See</u> <u>Davis</u>, 714 F.3d at 814 (rejecting restitution order because "the specific conduct underlying the elements of the offense, 'and thus forming the basis for [the] offense of conviction, does not include the theft'" for which restitution was ordered (quoting <u>Blake</u>, 81 F.3d at 506); <u>Penn</u>, 969 F.3d at 458 ("The specific conduct underlying the elements of the felon-in-possession offense does not include use of a firearm or flight from police. As a result, neither the owner of the car nor the owner of the fence is a 'victim' of Penn's conviction." (quoting 18 U.S.C. § 3663(a)(2)); <u>Reed</u>, 80 F.3d at 1420 ("[A] judge may [not] order restitution under the Victim Witness Protection Act, 18 U.S.C. §§ 3663-64, for conduct that is not an element of the offense of conviction.").

[36]<u>See</u> <u>Paradis</u>, 219 F.3d at 24-25 ("While the trustee may be a victim of bankruptcy fraud, that was not the charge against Paradis. His offense was laundering the proceeds of the fraud. There is no evidence that the trustee was harmed as a result of this offense."); <u>Varrone</u>, 554 F.3d at 334 ("[The victim] Bruss's loss was directly caused by a fraudulent scheme, and not by [the defendant] Castello's failure to file CTRs. Accordingly, Castello's offense conduct lacks the causal nexus to Bruss's loss required under <u>Hughey</u>, and the restitution order is not authorized."); <u>United States v. Udo</u>, 795 F.3d 24, 33-34 & 34 n.6 (D.C. Cir. 2015)(citing <u>United States v. Freeman</u>, 741 F.3d 426 (4th Cir. 2014); <u>United States v. Austin</u>, 479 F.3d 363 (5th Cir. 2007)).

like <u>Benally</u>, allow a wider causal berth when the element-satisfying conduct "cannot reasonably be divided," <u>Benally</u>, 19 F.4th at 1269, from the victim-harming conduct, still the conduct as charged here could not benefit from such a rule.[37]  Even those courts such as the Sixth Circuit that reject the elemental approach would not permit restitution.[38]  Even if those courts would award restitution "based on facts not strictly required to secure a conviction," <u>Ruiz-Lopez</u>, 53 F.4th at 405, still to award restitution under Michaud's circumstances would require much more than merely looking beyond a narrow focus on the elements of the offense of conviction.  To award restitution here requires looking to "similar actions justifying restitution" that possess "a significant connection [to] the crime of conviction," <u>Hughey</u>, 495 U.S. at 415 (quoting <u>United States v. Hughey</u>, 877 F.2d at 1264), an approach to MVRA and VWPA restitution that is impermissible.

Because of the manner in which the United States indicted Michaud and drafted the plea agreement, which lacks an 18 U.S.C. § 3663A(a)(3) or § 3663(a)(1)(A) provision, <u>cf.</u> 18 U.S.C. §§ 3663A(a)(3), ("The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."); 18 U.S.C. § 3663(a)(1)(A) ("The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the

---

[37]<u>See</u> <u>United States v. Yijun Zhou</u>, 838 F.3d 1007, 1013 (9th Cir. 2016)(permitting MVRA restitution to more victims than the one mentioned at the plea colloquy because the "Defendant did not plead guilty only to the Nordstrom allegations -- he pleaded guilty to Count One of the indictment," and because "Congress likely intended restitution to all victims within the scope of an admitted crime, even if the parties focused primarily on one set of victims at the plea colloquy"); <u>United States v. Bailey</u>, 974 F.2d 1028, 1033-34 (4th Cir. 1992)(rejecting the proposition that restitution was proper only with respect to investors specifically named in the indictment where the "offense was broadly defined in the indictment").

[38]<u>See</u> <u>Ruiz-Lopez</u>, 53 F.4th at 404-06; <u>Donaby</u>, 349 F.3d at 1054-55, <u>Washington</u>, 434 F.3d at 1268-70, <u>Chalupnik</u>, 514 F.3d at 804-06.

victim of the offense."), there is no "victim" to whom restitution can be ordered. The United States, in the Tenth Circuit, might want to include such a subsection (a)(3) provision in the plea agreements for most non-scheme offenses, especially possession crimes. Cf. Mendenhall, 945 F.3d at 1269 (noting that, because of subsection (a)(3) provisions, "prosecutors are not left without recourse" for restitution problems); United States v. Bell, No. 21-11103, 2022 WL 17729413, at *4–5 (5th Cir. Dec. 16, 2022)(interpreting (a)(3) provision in non-scheme offense to authorize "restitution for losses resulting from [the defendant's] criminal conduct, including losses resulting from relevant conduct involving other Subway restaurant robberies" (emphasis in original)).

The Tenth Circuit has instructed that to order restitution without legal authority "affect[s] the fairness, integrity, and public reputation of judicial proceedings." Mendenhall, 945 F.3d at 1270 (citing United States v. Gordon, 480 F.3d at 1212). The Court is mindful not to overstep that boundary. Accordingly, the Court holds that it lacks authority to order Michaud to make restitution under either the MVRA or the VWPA to any of the businesses that he burglarized at the Sandia facility in November, 2020.

**IT IS ORDERED THAT**: (i) the Defendant Corey Evan Michaud's oral objections to the Addendum to the Presentence Report, filed January 21, 2022 (Doc. 43)("Addendum"), are sustained; and (ii) the Court will not order that Michaud make restitution to any purported victim named in the Addendum on the basis either of the MVRA or the VWPA.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alex M. M. Uballez
  United States Attorney
Frederick T. Mendenhall, III
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Devon Fooks
Federal Public Defender
Albuquerque, New Mexico

     *Attorneys for the Defendant*